## A. E. BASSETT v. SIMON HAWK.

ERROR TO THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 14, 1887—Decided January 3, 1888.

The will of a testator, who died in 1843, devised land " to my son Daniel, to his use as long as he shall live, and to his legal heirs, if he have any, at his death; and if my son Daniel do not have any legal heirs at his death, then, and in that case, . . . . . I will it to be given to my grandchildren, Charlotte, Mary and Columbus." Daniel conveyed in 1850, and his grantees and their grantee, the defendant, took and held possession under his title thereafter. Columbus died in 1852, leaving a mother; Mary died in 1857, leaving a son; Daniel died in 1873 without lawful children. In 1881, Charlotte, who survived, conveyed a parcel of the land devised, and the title of her grantee passed to plaintiff, who brought ejectment in 1882. *Held:*

1. That the devise to Daniel, being made prior to the act of 1855, under the rule of Shelley's Case, was of an estate in fee-tail.

2. That, as the devise over to the grandchildren was not dependent upon a contingency attached to their capacity to take, but to an event independent of and not affecting their capacity either to take or transmit, their remainder was vested from the testator's death.

3. That, under the foregoing, the statute of limitations, § 2 of act of April 13, 1859, P. L. 603, would affect by its bar, not only the tenant in tail, but the remaindermen.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

Nos. 209, 218, October Term 1887, Sup. Ct.; court below, No. 51 June Term 1882, C. P.

This was an action of ejectment by A. E. Bassett against Simon Hawk for a parcel of land in South Buffalo township, containing twenty-five acres, more or less, brought March 23,

1882. The plea was not guilty. A former judgment, for the defendant, was reversed in this court with a venire de novo, and is reported in 114 Pa. 502.

At the second trial, on March 24, 1877, it was made to appear that Columbus McGinley died on April 14, 1843, seized in fee of and residing upon a tract of about one hundred acres, including the land in dispute, and leaving a will, duly admitted to probate on April 24, 1844, containing the following provision :

The farm on which I live, in Buffalo township aforesaid, I give and bequeath the one half of the same to my daughter, Nancy Clark, being the end next William Morrison, and adjoining lands of William Todds and George Keener, Sen., with the buildings and orchard; the balance of the land, or the other half of said tract, I will to my son, Daniel McGinley, to his use as long as he shall live, and to his legal heirs, if he have any, at his death; and if my son, Daniel McGinley, do not have any legal heirs at his death, then, and in that case, this part of the farm aforesaid which is not devised above to my daughter, Nancy Clark, I will it to be given to my grandchildren, Charlotte Clark, Mary Clark and Columbus Clark.

On August 16, 1850, John Clark and Nancy, his wife, and the daughter of the testator, who had been occupying the improved part of said farm since the testator's death, joined in an article of agreement with Daniel McGinley, which, reciting that claims had been entered in the Common Pleas as liens against the land of which the testator had died seized, and that suit had been brought by John and Nancy Clark against said Daniel, provided that the said suit should be discontinued; and " the said Daniel McGinley, for himself, his heirs and assigns, sells, transfers and releases forever to the said John Clark and Nancy, his wife, the following described piece or parcel of land above described in fee, so far as he has any interest therein, to wit, beginning . . . . . estimated at thirty-six acres, more or less;" and John and Nancy Clark conveyed and released to Daniel McGinley all that remained of the tract devised in said will. Mr. and Mrs. Clark then went into possession of the thirty-six acre parcel, which embraced the land in dispute, and remained thereon till Jan-

uary 4, 1855, when they conveyed the same to Simon Hawk, the defendant, who went into possession, paid taxes and made improvements.

Of the grandchildren to whom the devise in said will was made, all of them children of said Nancy Clark by a first husband, Columbus died in 1852, leaving his mother to survive him, still living; Mary, the wife of William McCain, died September 29, 1857, leaving a son, Frank McCain, still living; Charlotte, who had become the wife of Jacob Forcade, survived them; Daniel McGinley died May 12, 1873, without lawful children.

Jacob Forcade died February 14, 1876, and on January 21, 1881, Charlotte Forcade conveyed the parcel devised in said will to Daniel McGinley to M. L. A. McAlister, who conveyed to J. F. Jewell, who on March 10, 1882, conveyed the land in dispute to A. E. Bassett, the plaintiff.

The court, NEALE, P. J., charged the jury and answered the points presented, as follows:

This action is brought by the present plaintiff for the recovery of twenty-five acres of land, more or less, situate in South Buffalo township, in this county, according to the boundaries as described in the præcipe which has been read in evidence in your hearing. It may be that the præcipe calling for only twenty-five acres of the land, might confine the plaintiff in any verdict that he would recover, to the twenty-five acres; but it is somewhat in doubt whether that would be the case or not, as clearly a part of the Hawk land lies north of the division line of the original Colum. McGinley tract, and there is no title shown in the plaintiff for any of the land lying north of that line; therefore, in order to meet that, we have framed a verdict which if you find the fact as we may indicate to you, will be your verdict. It is, of course, for the jury to determine upon the facts in the case, their verdict, whatever it may be.

Colum. McGinley, it seems, was seized of an estate in fee amounting to about one hundred acres of land, and died sometime in 1843 or 1844, having first made his last will and testament. By that last will and testament he devised his tract of land to his two children. To the one he gave one-half; that is, to his daughter he gave one-half of the tract in fee, that is, the

half lying north of the division line of this tract; and to the son was devised the other half part of the tract to himself for life, and in case he left any legal heirs, to them, with the additional clause, that in case he died without legal heirs, then his half was at the time of making the will, devised to the three children then living, of Nancy Clark, the sister of Daniel McGinley, who was then married and had three children in full life.

[Upon the death of Colum. McGinley, this estate vested in Daniel McGinley as the life tenant, or as the tenant in fee, if he afterwards had legal heirs. In default of the legal heirs, it vested in the three children, the persons named in the will, as the devisees of that part or interest in the estate.

Daniel McGinley, it appears from the evidence, died in the year 1873, leaving no legal heirs, or children, as we interpret the meaning of that will to be. The estate, so far as that piece of land is concerned, devised to Daniel, vested at the death of old Colum. McGinley in Daniel for life, and at his death, in the three children of Nancy Clark. Their interest became vested, but it was not capable of being reduced to possession so far as those three children were concerned, until after the death of Daniel McGinley. And only then, upon the contingency that he should die without legal heirs, which contingency actually took place, as he appears to have died without having left any children at all.

Then, the estate having vested in the three children at the time of the death of old Colum. McGinley, the original testator, we hold that it was a vested estate so far as those three children were concerned excepting as to the possession. They had no right of entry, no right of immediate possession, in fact, no right of possession until Daniel McGinley died, unless it would be through Daniel McGinley himself. He might have given them the right, or surrendered his right of life possession to those three children. The three children of Nancy Clark as named in the will, having then taken an interest in that estate, they would be entitled now, or such heirs as they may have, to recover that part of the land as devised to Daniel under the will of Colum. McGinley. And, therefore, in considering the right of the plaintiff in this present action to recover, you have to confine yourselves to what title he had, or what title he now claims upon.

It is clear that he possesses, so far as the court can understand it, the interest or title of Charlotte Forcade in that particular piece of land, and therefore, there can be no doubt about his right to recover the one undivided one-third part of this piece of land.

But Columbus Clark was living, so far as the testimony shows, after the death of Colum. McGinley, the original testator, and therefore, by virtue of the will he had a right to the one undivided third part of the land so devised, without having the right of possession until the death of Daniel McGinley, in case Daniel McGinley died without leaving legal heirs, or issue. You will have to consider as to the interest of Columbus Clark, where did it go?

Under the intestate laws of the commonwealth of Pennsylvania, where a child, being seized of an estate or being heir to an estate or entitled to it, dies being a minor, the interest of that particular child or heir goes to the parents of the child—to the father, and if the father be dead, to the mother. Now that estate is outstanding, so far as any division is concerned. Columbus Clark is not shown to have parted with his interest in any way, and his interest would therefore go to his mother during life, and if she has made a conveyance of her interest in that land, that conveyance would include the interest which she might have derived, either before or subsequent to the death of Columbus Clark, her son, which would pass to the grantee under her deed, and therefore, the life interest vested in Simon Hawk to the estate of Columbus Clark, and if you find the facts as we have stated, to be so, that disposes of that two third interest.

As to the other child of Mary Clark, who afterwards married McCain, who appears to be dead, she having left a child, her interest descends to her child. She having died subsequent to the death of Colum. McGinley, the testator, her interest descends to her heirs, and as we find they have not in any way joined in the deed to the present plaintiff, that interest is still outstanding and the plaintiff can only recover upon title vested in himself; he cannot where the title is outstanding in another, he must show good title in himself; no difference whether this defendant has that outstanding title or not, he is only entitled to recover so far as he shows a right

to recover. If you find the fact as we have stated to you, and we believe that those are the facts that are in evidence, but the question of fact is submitted to you; if you find the facts as we have stated, then this plaintiff is only entitled in this suit to recover the one undivided third part of the land described in his writ, lying south of that division line.]¹

Plaintiff's points:

1. That under the will in evidence, Daniel McGinley was devised a life estate only, in the south half of the farm owned by the testator, Colum. McGinley, and in the event of Daniel's leaving no children at his death, then that part of the land left to him was devised to Charlotte Clark, Mary Clark and Columbus Clark, grandchildren of the testator.

Answer: Affirmed.

2. That Daniel McGinley, never having married, left no legitimate child, and that of the several grandchildren mentioned in the will, Charlotte, intermarried with Jacob Forcade, alone survived Daniel. The particular estate left to Daniel by his father, therefore, at the death of Daniel, May 12, 1873, eo instanti vested in Charlotte Forcade, and the plaintiff by legal title, derived immediately from her, has shown a complete legal title to all the land in controversy lying south of the middle of the tract owned by Colum. McGinley.

Answer: That point is refused.²

3. That under all the evidence in the case, the plaintiff is entitled to recover, and the verdict of the jury should be for the plaintiff for the land described in the writ, to wit, twenty-five acres.

Answer: That point is affirmed, so far as title is shown to be in plaintiff, in the land in dispute.³

Defendant's points:

1. If the jury are satisfied from the evidence that twelve acres of the land in suit is not in the south half of the tract, for this there can be no recovery in any event.

Answer: Affirmed.

2. The plaintiff has only shown the title of Charlotte Clark, now Forcade, in him, and in any event can only recover the undivided one third of the twenty-five acres lying in the south half of the tract.

Answer: That point is affirmed.⁵

3. The will of Colum. McGinley gave Daniel an estate in the land in fee, under the rule in Shelley's case.

Answer: That point is refused.[10]

4. If the third point is incorrect, then Charlotte, Mary and Columbus Clark took a contingent remainder, and Daniel took a life estate and was life tenant in tail of the estate.

Answer: That point is refused.[6]

5. This contingent remainder depended upon two contingencies: first, that Daniel would die without legal heirs or children, and second, that the remainder could not vest in them until Daniel's death.

Answer: That point is affirmed.

6. It is an inflexible rule that a contingent remainder must vest during the continuance of the particular estate, or upon the instant it determines, or not at all; if it does not then vest it is gone forever.

Answer: That point is affirmed.

7. A contingent remainder may be destroyed by any occurrence which brings to end the particular estate before the happening of the contingency, on which the remainder is to vest.

Answer: That point is affirmed.

8. If the jury are satisfied from the evidence that Nancy Clark took possession of the land in suit, in 1850, or before that time, and claimed it as her own and exercised all the usual and ordinary acts of ownership over it, and in 1854 sold it to the defendant and made him a deed in fee for it, and he, in 1854, took possession of it as his own and exercised all the usual and ordinary acts of ownership over it for a period of over 21 years, before the death of Daniel McGinley, any claim that he might have had was barred by the statute of limitations, and all remainders dependent on his estate fell and were barred thereby, and defendant is entitled to recover.

Answer: That point is refused.[7]

9. When Nancy Clark made her deed in fee to Hawk and he entered and put his deed on record and claimed under it adverse to the world and exercised all the usual and ordinary acts of dominion and ownership over it, in 21 years from that date an ouster would be presumed, and his title by the statute would be good, although Daniel died before the 21 years elapsed; for when the statute commences to run it is not stop-

ped, but continues to run until the remainderman asserts his or her rights, and that was not done in this case until this suit was brought in 1882, twenty-seven years after Hawk entered.

Answer: That point is refused.[8]

10. Charlotte Forcade having made deed to Mrs. McAllister for part of the south end of the tract under her claim under the will and under Daniel's title, and having received the purchase money therefor, is estopped from setting up title to Nancy's thirty seven acres, and the plaintiff cannot recover on her title.

Answer; That point is also refused.[9]

[If you find the facts as we have stated, this would be as near as we can frame it, the form of the verdict: "We find in favor of the plaintiff for. the one undivided third part of the land described in the writ so far as the same lies south of the division line of the Colum. McGinley tract, with six cents costs and six cents damages ; and we find for the defendant for the land lying north of that division line, and as to the remaining undivided two thirds of said land described in the writ, we find for the defendant."] [4]

Both parties excepted to the charge of the court and the answers to the points, and the jury having found for the plaintiff for one third and for the defendant for the remaining two thirds of the land described in the writ, both parties took out writs of error.

A. E. Bassett assigned as error:

1. The parts of the charge embraced in [ ] [1]
2. The answer to the plaintiff's second point.[2]
3. The answer to the plaintiff's third point.[3]
4. The part of the charge embraced in [ ][4]
5. The answer to the defendant's second point.[5]

Simon Hawk assigned as error:

1. The answer to the defendant's fourth point.[6]
2. The answer to the defendant's eighth point.[7]
3. The answer to the defendant's ninth point.[8]
4. The answer to the defendant's tenth point.[9]
5. The answer to the defendant's third point.[10]

*Mr. David Barclay*, (with him *Mr. Austin Clark*), for A. E. Bassett:

1. No estate could vest in the grandchildren at the testator's death or while a possibility existed that Daniel should leave behind him "legal heirs" or children. This possibility became extinct only at Daniel's death, when the estate must vest or lapse; and Charlotte, but one of the class to whom the devise was made, being then living, the whole remainder vested in her: Gross' Est., 10 Pa. 360.

2. There is no rule of law in opposition to the testator's intent: Dunwoodie v. Reed, 3 S. & R. 440. In this case the intent was to give Daniel an estate for life only; a fee to his "legal heirs" if he left any; if not, then a fee to the grandchildren: Dunwoodie v. Reed, supra; Findlay v. Riddle, 3 Binn. 151; Butler's Co. Lit. 379 a.

3. In the construction of wills it seems settled that when the intent is apparent, the word "heirs" will always be construed as a word of purchase, and not of limitation: Archer's Case, 1 Co. 66; Luddington v. Kime, 1 Salk. 224 (1 Ld. Raym. 203; 3 Lev. 431). By heirs, children are generally intended: Hallowell v. Phipps, 2 Wh. 382; Findlay v. Riddle, 3 Binn. 155; Smith v. Folnell, 1 Binn. 563; Haskins v. Tate, 25 Pa. 249.

4. An estate-tail in Daniel McGinley could not aid the defendant; for, under the act of Jan'y 16, 1799, 3 Sm. L. 338, to bar an estate-tail by deed this intention must be set forth in the deed; and under the act of April 13, 1859, P. L. 603, the statute of limitations does not run against the remainderman: Tiernan v. Roland, 15 Pa. 429; George v. Morgan, 16 Pa. 95; Elliott v. Pearsoll, 8 W. & S. 38. The statute could not run against Charlotte Forcade until her husband died, February 8, 1876.

*Mr. Chas. McCandless* (with him *Mr. Calvin Rayburn*), for Simon Hawk:

1. At the death of Daniel McGinley, May 12, 1873, Nancy Clark and Simon Hawk had had twenty-three years adverse possession and held title by statute against Daniel McGinley and all others. Defendant's eighth point[7] should have been affirmed.

2. The estate was an estate-tail, Daniel tenant in tail with an estate for life, with a remainder over to the grandchildren

dependent on the contingency that he would die without lawful issue: 2 Bl. Com. 168; Shars. & B., L. C., 343; Way v. Gest, 14 S. & R. 40; Stump v. Findlay, 2 R. 168; Waddell v. Rattew, 5 R. 231; not an executory devise: Wager v. Wager, 1 S. & R. 374; Minnig v. Batdorff, 5 Pa. 503; Derr v. Demorest, 1 N. J. 525; Stehman v. Stehman, 1 W. 466: Dunwoodie v. Reed, 3 S. & R. 435; Willis v. Bacher, 3 W. C. C. 369: Hawley v. Northampton, 8 Mass. 3; Wolf v. Vanostrand, 2 Comst. 436.

3. When there is a life-estate and a contingent remainder, the extinguishment of the life-estate by adverse possession of twenty-one years destroys the remainder dependent upon it: Baldridge v. McFarland, 26 Pa. 338; Findlay v. Riddle, 3 Binn. 139: Stump v. Findlay, 2 R. 168. This contingent remainder could have been barred by the deed of Daniel McGinley properly executed; and where this can be done, the statute will bar the particular estate and all remainders dependent upon it; act of April 13, 1859, P. L. 603; 2 Shars. & B., L. C., 354, 358.

4. Where the person who is to take the estate is fixed and certain, and the contingency is not with reference to his surviving the occurrence of the fact, upon the death of the remainderman the remainder will pass to his heirs: 2 Shars. & B., L. C., 373: Chess's App., 87 Pa. 362; Winslow v. Goodwin, 7 Met. 363; Buck v. Lantz, 49 Md. 439; Barnitz v. Casey, 7 Cranch 469: Snively v. Beavans, 1 Md. 222; Spence v. Robbins, 6 G. & J. 512; Hopkins v. Jones, 2 Pa. 69; Kelso v. Dickey, 7 W. & S. 279; hence Charlotte's or Bassett's interest, under no case can be increased from the third to the whole by the death of Columbus and Mary. But, under the rule in Shelley's case and the decisions of this court under it, the court should have held that Daniel took a fee, or if not, a fee-tail.

OPINION, MR. CHIEF JUSTICE GORDON:

This was an action of ejectment for the recovery of the possession of a tract of twenty-five acres of land, more or less, situate in the township of South Buffalo in the county of Armstrong, brought by A. E. Bassett against Simon Hawk. The land in controversy was part of a larger tract owned by

Columbus McGinley, in his lifetime, who, previously to his decease in 1843, made his will, which, so far as it affects this case, reads as follows: " The farm on which I live, in Buffalo township aforesaid, I give and bequeath the one half of the same to my daughter, Nancy Clark, being the end next William Morrison, and adjoining lands of William Todds and George Keener, Sr., with the buildings and orchard; the balance of the land, or the other half of said tract, I will to my son, Daniel McGinley, to his use as long as he shall live, and to his legal heirs, if he have any, at his death; and if my son Daniel do not have any legal heirs at his death, then, and in that case, this part of the farm aforesaid which is not devised to my daughter, Nancy Clark, I will to be given to my grandchildren, Charlotte Clark, Mary Clark and Columbus Clark." In pursuance of an amicable partition made between Nancy Clark, and her husband, John, of the one part, and Daniel McGinley of the other part, and, dated August 16, 1850, the said Daniel deeded in fee to the said John and Nancy Clark, thirty-six acres of the land claimed by him under the said will, which is the land now in controversy. The parties last named, afterwards, January 4, 1855, deeded the property in question to Simon Hawk, the defendant below. It would appear further, from the evidence, that during or before the year 1850, Nancy Clark entered upon this land, claiming it as her own, built a cabin house upon it, and occupied it until she sold it to Hawk, who has resided upon it continuously from that time to this. From the facts thus detailed, the defence may be stated in brief as follows: Under the will of Columbus McGinley, Daniel took a fee; if not a fee simple yet a fee-tail, and as he died without issue the remaindermen have been barred by the statute of limitations. On the other hand, the plaintiff claims through Charlotte Forcade, one of the three grandchildren mentioned in the will of Columbus McGinley, and the only one who survived Daniel McGinley, the life tenant who deceased in 1873, without lineal heirs. Now, the plaintiff's contention is that Daniel, under the will of his father, took but a life estate; that, as a consequence, his vendees took nothing by his conveyance but the right of possession in the premises during his life, and that the statute could not begin to run as against the remaindermen until their

right of entry accrued, which was not until his death. Admitting the premise here stated, that is, that Daniel was but a life tenant, and the conclusion is undoubtedly correct, and so the court held. But the plaintiff's counsel and the court differed in this; the former insisted that the remainder devised to the grandchildren was contingent, and became vested only on the death of Daniel without issue; hence, Charlotte, being the only survivor of the three grandchildren at the time of Daniel's decease, took the entire estate. The court, however, refused to adopt this view of the case, and held: that whilst Daniel had a life estate only, yet that the devised remainder vested, on the death of the testator, in the three grandchildren, and that upon the death of Mary and Columbus Clark their interests passed to their mother, Nancy Clark, for life.

Admitting the premise assumed both by court and counsel, and we cannot pronounce this ruling erroneous. It is true the remainder was in abeyance, and so remained until the decease of the life tenant, but, as was said in Kelso v. Dickey, 7 W. & S. 279, the contingency was not attached to the capacity of the remaindermen to take, but to an event independent of, and not affecting either their capacity to take, or to transmit the right to their representatives. So, in Chess's Appeal, 87 Pa. 362, where a testator devised real estate to his son, and should he die without legitimate issue then the property to be sold, and after paying certain legacies, the balance to be distributed amongst his grandchildren; it was held, that the representatives of those grandchildren who died before the son's death, should share in the distribution with those living. "Attaching a contingency to the gift of the second bequest ought not and does not affect the case, unless that contingency relates to the capacity of the second legatee, or donee, to take:" McClure's App., 72 Pa. 414. From the authorities here cited, it is obvious that the assignments of error on the plaintiff's writ cannot be sustained. But a more serious question arises on the writ taken by the defendant. As we have seen, the court held that Daniel McGinley took under his father's testament but a life estate. To this ruling the defendant excepted, and thus is raised the main question of the case.

It is contended, on part of Hawk, that the estate vested in

Daniel was a fee simple, or, at least, a fee-tail. The learned president of the Common Pleas refused to adopt this view of the matter in controversy, holding that the word "heirs" in the will must be construed to mean children, who, had there been any, would have taken as purchasers, and not as by descent from their father; and that, as a consequence, the remainder was vested in the grandchildren at the death of the testator, which not having been defeated by the occurrence of the contingency, that is, the birth of lawful issue, the entire estate in fee passed to the remaindermen at Daniel's death. In this ruling of the court below we cannot concur, for by it an unwarranted interpretation is put upon the word "heirs." This is strictly a word of limitation, and there is nothing apparent on the face of the will which tends to show that the testator intended the contrary. "The other half of said tract I will to my son Daniel McGinley, to use as long as he shall live, and to his legal heirs, if he have any, at his death; and if my son Daniel McGinley do not have any legal heirs at his death, then," etc. This is all of the will which at all bears on the point in controversy, and there is surely nothing in it which warrants the construction adopted by the court below. The only single reason for this construction is, that as the testator evidently intended to give Daniel but a life estate, the issue, if any, would take as purchasers. But this conclusion is not sound, in that regard is had to the particular rather than to the general intent. We agree that the intention of the testator is, in the construction of his will, the imperative rule by which it must be interpreted.

Here, then, our first inquiry is, what did Columbus McGinley intend by the language of which he made use? We may admit that he intended to give Daniel but a life estate, but this of itself is not sufficient to prevent the application of the rule in Shelley's Case, for the further question is, what did he intend by the word "heirs"? And what is there in the context to show that he did not intend to use that word in its technical sense? The testator was evidently not speaking of children as such, for there were none then in existence, but of those whether children or grandchildren who should be born of his blood, and be living at the time of his death and who, in consequence, would be capable of taking from him. In

other words, Daniel is the one who shall give character to those who may take after him; he is made the stirps, or stock of the succession which is to take the devised property, and so, by the rule above stated, the inheritance is vested in him, and he is vested with an estate of inheritance. As we said in Yarnall's App., 70 Pa. 335, " The life estate incorporates with the inheritance because of the failure of the testator to designate any other than the legal line of descent. In short, he calls the devisee a tenant for life, yet vests the fee in him." So, in Findlay v. Riddle, 3 Binn. 139, it was held by Mr. Chief Justice TILGHMAN, that though a testator may intend to give a life estate, yet if the main or general intent is to give other estates inconsistent with an estate for life, there the particular intent being of less importance, must give way to the general intent. He instances a devise to A. for life, remainder to his issue as tenants in common, and in default of such issue, the remainder to B. in fee, and holds that in such case A. takes an estate-tail, because the main intent was that B. should take nothing until there was a failure of the issue of A. A case more nearly parallel to the one in hand could hardly be devised, for without doubt the main intent of Columbus McGinley was that the issue of Daniel should take to the exclusion of the children of Mrs. Clark. Also, in Wild's Case, 6 Co. 17, it was held, if there be a devise to A. and his children, and there be no children then in being, it creates an estate-tail in A.; and this because the devise being in words de presenti, the children, if any, must take by way of limitation, and thus the general is made to override the particular intent. We may also call attention to the case of Allen v. Markle, 36 Pa. 117, where we held, per Mr. Justice STRONG, that, where there was a devise to A. for life, and at his decease to his legitimate offspring forever, and on failure of such issue, over to other devisees, A. took an estate-tail. But it is useless to multiply authorities, for, unquestionably, Shelley's Case governs the controversy in hand, and that is the end of the matter. This rule may be an unreasonable one, and admittedly does generally defeat the particular intent of the testator, but it is so thoroughly fixed in our law, and upon it depends so many valuable land titles, that it would be a very serious breach of our judicial duty to even hesitate to enforce it.

As the devise was made previous to 1855, it becomes important for us to consider whether under it Daniel took in fee or in tail.  After a careful consideration of the language of the will we have come to the conclusion that the devise was of a fee-tail.  The hypothesis on which the testator made the devise over would seem to rebut the idea that he meant heirs general, for he gives the remainder to the children of Daniel's sister, who, on the happening of the contemplated event, would be his heirs.  He certainly did not contemplate that when his son died he would have no heirs of any kind, for he negatives such a presumption by appointing Daniel's nephew and nieces to take after him.  He must, therefore, by the use of the word "heirs" have intended heirs of the body, for he might well have supposed that Daniel might die without having had lawful issue.  We think, therefore, that there can be no serious doubt that the intention was to limit the devise to heirs of the body.  Daniel being thus a tenant in tail, one holding adversely to him for twenty-one years, would, as well according to the case of Baldrige v. M'Farland, 26 Pa. 338, as by virtue of the provisions of the 2d section of the act of the 13th of April, 1859, acquire title not only as against the tenant in tail, but also against the remaindermen or reversioners; and so the court should have instructed the jury.

As what we have said sustains the second and third assignments on Simon Hawk's writ of error, we reverse the judgment and order a new venire.  On the writ of A. E. Bassett the

Judgment is affirmed.