## W. E. STEWART ET AL. v. WILLIAM NEELY.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 6, 1890—Decided January 5, 1891.

1. By the conveyance of the most remote of several contingent remainders to a life-tenant by deed, the life-estate is not thereby merged with the remainder and enlarged into a fee simple, to the destruction of the intermediate remainders.
2. Moreover, a contingent remainder can be conveyed only by a devise: a deed purporting to convey it, unless executed and delivered after the contingency happens, will be operative only as an estoppel of the remainder-man.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 221 October Term 1890, Sup. Ct.; court below, No. 249 October Term 1890, C. P. No. 2.

Opinion of Court below.

On August 13, 1890, a case stated was filed wherein William E. Stewart and Catharine Watson Stewart, his wife, were plaintiffs, and William Neely, defendant, by which it was shown:

That, by a contract in writing dated June 19, 1890, the plaintiffs agreed to sell and convey, and the defendant to buy, a certain tract of ten acres of land, and that in compliance with the contract, the plaintiffs had tendered to defendant a deed for the land on August 12, 1890, which the defendant refused to accept. The question for determination was whether the plaintiffs could convey a good title to the land.

After argument of the case stated, the court, WHITE, J., delivered the following opinion:

John Watson devised ten acres of ground to his niece Kate B. Watson, now the wife of William E. Stewart, the plaintiff, "during her natural life, and at her decease to such child or children as she may leave surviving her at such decease, such children to take share and share alike and hold the same in fee-simple. But, if my said niece should die without leaving any children surviving her, the ten acres to go to my brother Samuel Watson in fee-simple."

The will was dated in 1876, and probated February 9, 1876. At that time, Kate B. Watson was unmarried, but in 1882 married Wm. E. Stewart and now has three children. In 1878, the interest of Samuel Watson under the will, in the ten acres, was sold by his assignee in bankruptcy, and, after several conveyances, was vested in Kate B. Watson, by deed from Robert Watson, on April 1, 1880. The question presented by the case stated, is whether, under the foregoing facts, Kate B. Watson, now Mrs. Stewart, has a fee in the ten acres, and can make good title in fee-simple thereto?

Under the will, Kate B. Watson took simply a life-estate. But it is contended on part of plaintiffs that, as she purchased the remainder to Samuel Watson, before she had any children, the contingent remainder to her children was defeated by her life-estate being swallowed up or merged in the fee of Samuel Watson; that, there being no children in esse, in whom that remainder could vest, at the time she acquired the interest of Samuel Watson, her life-estate merged, and there was nothing

Opinion of Court below.

to support the contingent remainder to the children thereafter to be born, and it must fall.

It is likely this contention could be sustained under the doctrine laid down in Mr. Fearne's treatise on Contingent Remainders, and in the case of Purefoy v. Rogers, 3 Saund. 386, and in some other old English cases. They are based on the nice technicalities of the common law, springing out of and intended to sustain the principles of feudal tenures and the necessity of livery of seisin.

It was a principle of the common law that there must always be some one in possession to render the proper feudal services to the lord. Hence the necessity of a continuing freehold-estate to support a remainder. If there was a life-estate to A, remainder to B, B could not take possession till A's death. If A's life-estate was destroyed before his death, as by forfeiture, common recovery, or merger, there was no one to do service to the lord, the estate reverted, and B's remainder was gone. Sometimes the life-tenant was the heir of the grantor, and inherited the reversion. He purposely destroyed his life-estate, in order to destroy the remainder and thus acquire the reversion in fee.

So much injustice resulted from the old doctrine of merger, that an act of Parliament was passed in 1845, 8 and 9 Vic., c. 106, § 8, saving contingent remainders from destruction by a forfeiture or merger of the life-estate. It is now no longer the law in England. In many states in our Union, statutes were passed doing away with the old doctrine that a particular freehold estate is necessary to support a remainder, and also saving it from the forfeiture or merger of the life-estate. Such is the case in Maine, Massachusetts, New York, Indiana, Mississippi, Missouri, Kentucky, Texas, Virginia, Michigan, Minnesota, Wisconsin, California, Alabama, Georgia, etc.: 1 Washb. on R. P., 206; 2 Idem, 643.

We have no statute on the subject in Pennsylvania; but we never had feudal tenure or livery of seisin in this state, and, therefore, there was never any foundation for the old doctrine here. It was, however, recognized in some early cases, but not without an earnest protest from one of the ablest jurists that ever sat in a Pennsylvania court.

Dunwoodie v. Reed, 3 S. & R. 435, decided in 1817, was the

first case. Jane Dunwoodie, the life-tenant, suffered a common recovery, to destroy the contingent remainders, and then sold the property in fee to Reed. The court below held that the common recovery destroyed the life-estate, the remainders fell, and she took the fee as heir of the testator, her father. The judgment was affirmed in the Supreme Court, by a divided court, TILGHMAN, C. J., for affirming, GIBSON, J., against; DUNCAN, J., taking no part, having been of counsel in the case. Judge GIBSON filed a most vigorous opinion against engrafting on the law of Pennsylvania this old and unjust relic of feudalism. He said: "It is monstrous that the tenant of the particular estate, should be permitted, by his own act, to defeat the intention of the grantor, in any case where the execution of that intention is not inimical to public policy; and it is still more monstrous that he should be punished through the sides of the innocent contingent-remainder-man. In fact, the case thus becomes the very disease it was intended to remedy. In this instance, the idea of punishing Jane, by a forfeiture of her life-estate, if she is at the same moment to acquire the reversion in fee, as heir at law of the testator, is perfectly ridiculous. Unless, therefore, I find myself bound by a series of decisions, establishing the doctrine as the law of this state, I shall not accede to it." He then proceeds to show that there was no such series of decisions in this state. And, speaking of the doctrine of forfeiture, he says: "If, then, this doctrine of forfeiture, which is one of the oppressive incidents of feudal tenures, has not been already engrafted on our system, why should we, who profess not to have adopted the whole common law, lean towards its introduction now?"

The next case was Lyle v. Richards, 9 S. & R. 322, decided in 1823. This involved substantially the same questions, was most elaborately argued by the ablest counsel, and elaborate opinions were filed by TILGHMAN, C. J., and GIBSON and DUNCAN, JJ. DUNCAN, J., sided with the Chief Justice in this case. But the forcible and logical opinion of Judge GIBSON must command the assent of every reader. Referring again to the doctrine of forfeiture (and the doctrine of merger rests on the same foundation) he says: "Then, if the doctrine of forfeiture has not already been riveted on us, its palpable injustice should make us struggle to cast it off. When trustees

to support contingent remainders join in a common recovery, chancery punishes them; and the only reason why that court will not punish a tenant for life, for his own benefit, is, that there being no trust in the case, it has no jurisdiction." In England, if there were trustees for the contingent remainders, they were saved from forfeiture or merger. Judge GIBSON refers to the effort of Lord KENYON, Chief Justice of the King's Bench, in Parliament, "to remedy this very grievance." It was remedied a few years later.

In Bennett v. Morris, 5 R. 9, the doctrine was somewhat discussed, and seemed to be approved, but the case really rested on other principles. The devise was to C, during her natural life, and, then to her only heir during its life. The reversion was in the testator, and C inherited that as the sole heir of the testator. Dunwoodie v. Reed was followed in Abbott v. Jenkins, 10 S. & R. 296, and Waddell v. Rattew, 5 R. 231.

Since the foregoing cases were decided, there has been a complete change of public opinion, and of the law, on both sides of the Atlantic. The doctrine was abolished in England, as we have seen, by act of Parliament, and in all the leading American states by statutes. And I am not aware of any recent decisions in any of the other states where it is held to be the law now. Shall we, in Pennsylvania, retain this "unjust relic of feudalism," when it is being abandoned everwhere?

Harris v. McElroy, 45 Pa. 216, was the case of a devise for life with remainder to children. The case is not like the one at bar, but involved some principles similar. READ, J., in delivering the opinion of the court, referring to the doctrine of forfeiture, quotes approvingly from the dissenting opinion of GIBSON, J., in the case of Lyle v. Richards, supra, and adds: "This appears to have been the deliberate opinion of the English statesmen and jurists, for, by the act of 8 & 9 Vic., c. 106, passed August 4, 1845, this doctrine was abolished." And, after quoting that act, he says: "This court will never give its aid to produce such a destruction of the interests of persons whom the appellant was bound to protect."

In this case, Mrs. Stewart was bound, as a mother, to protect the interests of her children. She now asks the aid of the court to destroy their interests. This doctrine of forfeiture and merger has not yet been "riveted on us" and "its palpable injustice" induces me to "struggle to cast it off."

The case differs essentially, from many of the English cases cited in favor of the doctrine, and from some of our own. In most of them, there was some person in whom the remainder or reversion could vest on the destruction of the life-estate. That is not the case here. Kate B. Watson bought the interest of Samuel Watson. What interest had he in the ten acres? A fee, limited on the condition that Kate B. Watson died without leaving any child or children surviving her. His was not a fee limited on a fee, for that would not be sustained. In such a case, it might be an executory devise, but that does not come under the doctrine referred to. The fee to the children of Kate B. Watson, Mrs. Stewart, is limited on the condition they survive her. The devise is called a fee with a double aspect. The fee passes to the child or children that survive the tenant for life; if none survive her, then it passes to Samuel Watson. Both are contingent remainders, and neither vests until the contingency happens which determines where the fee shall go, and that contingency is determined at the death of Kate B. Watson.

This principle is clearly stated by 2 Washb. on R. P. 626: " If there is a contingent remainder limited in fee, no after limitation dependent upon it can be a vested one." " Devise to A for life; if he have male issue, then to such issue and his heirs; but if A die without issue male, then to T B in fee." Then, " though T B was alive, ready and capable of taking, except so far as his capacity depended on A's dying without issue, yet his remainder could not be otherwise than contingent while A lived; for, so long as he lived, there was a possibility of A's having issue, and thereby rendering the limitation to T B void by the first remainder absorbing the entire fee."

What, then, did Kate B. Watson acquire by purchasing the interest of Samuel Watson? Simply that contingent interest he had, dependent upon Kate dying without leaving any children surviving her. True, at the time she purchased it, she had no children. But how can she acquire by that purchase a greater interest than he had? That purchase gave her no vested interest in Samuel Watson's remainder, because he had no vested interest. I am at a loss, therefore, to understand on what principle of law, or common sense, this contingent and uncertain interest can merge and swallow up her life-estate.

Opinion of the Court.

Even if there was a kind of merger at the time she bought, because she had no children then, yet, afterwards, on the birth of children, it would open so as to let in the contingent remainder to the children: 2 Washb. on R. P. 599.

I am therefore of opinion that the law is with the defendant, and it is ordered that judgment be entered for the defendant on the case stated.

—Judgment having been entered as directed, the plaintiffs took this appeal, specifying that the court erred in entering judgment for the defendant, and in not entering judgment for the plaintiffs.

*Mr. Charles M. Thorp* (with him *Mr. John Dalzell, Mr. William Scott* and *Mr. George B. Gordon*), for the appellants.

Counsel cited: (1) Evans v. Davis, 1 Y. 332; Dunwoodie v. Reed, 3 S. & R. 435; Lyle v. Richards, 9 S. & R. 322; Abbott v. Jenkins, 10 S. & R. 296; Bennett v. Morris, 5 R. 9; McCay v. Clayton, 119 Pa. 139; Jordan v. McClure, 85 Pa. 495. (2) 1 Fearne on R., 4th Am. ed., 340, 341; 4 Kent Com., *254; 1 Washb. on R. P., *155; Purefoy v. Rogers, 3 Saund. 380; Kent v. Harpool, 1 Vent. 306; Hooker v. Hooker, Temp. Hardw. 13; Crump v. Norwood, 7 Taunt. 362. (3) Archer's Case, 1 Rep. 66; Bowles's Case, 11 Rep. 80: Boothby v. Vernon, 9 Mod. 147; Plunket v. Holmes, 1 Lev. 12; 1 Washb. on R. P., *155; 1 Fearne on R., 343, 344.

*Mr. Alex. Gilfillan*, for the appellee, was not heard.

In the brief filed, counsel cited: 1 Preston on Est., 89; Preston on Conv., 118; Lampet's Case, 10 Rep. 51; Shep. Touch., 239; Fearne on R., 337, 366; Williams on R. P., 215; 2 Washb. on R. P., 264; Robertson v. Wilson, 38 N. H. 51; Hays v. Taber, 41 N. H. 521; 4 Kent's Com., 260; act of April 18, 1853, P. L. 503; Penington v. Coats, 6 Wh. 277; Dougherty v. Jack, 5 W. 456; Harris v. McElroy, 45 Pa. 216.

PER CURIAM:

The authorities cited on behalf of the appellants were not necessary to sustain the familiar rule of the common law, that a contingent remainder must have an estate of freehold to support it. The application of this rule to the case in hand is unique.

It may be concisely stated thus : The tenant for life purchases, and has conveyed to her by deed, the interest of the contingent remainder-man,—the one furthest removed from the succession.   The life-tenant then claims that her life-estate is merged into the remainder, that intermediate contingent remainders are thereby destroyed, and that by reason thereof the life-estate has been enlarged into a fee.   The idea of a life-estate being merged into a contingent remainder is a novel proposition.   Aside from this, a contingent remainder can only be conveyed by a devise ; a deed purporting to convey it operates only as an estoppel, unless the conveyance is after the contingency happens : 4 Kent Com., 260 ; Williams, R. P., 215 ; 1 Washb., R. P., 264. We think judgment was properly entered for the defendant on the case stated.   ·

Affirmed.

