## Estate of Rebecca Moss.

*Decedent's estate—Wills—Vested and contingent remainders—Collateral inheritance.*

An estate in remainder passing by will or descent at the death of the remainderman, in order to be subject to collateral inheritance tax payable at his death, must pass an absolute right of future possession, and be such as is invariably fixed to remain to a determinate person after the particular estate has been spent.

Where, under the provisions of a will, the person who will ultimately take cannot be ascertained until the death of the life tenant, the tax cannot be assessed upon a bequest of such remainder until that contingency takes place.

Where a bequest is made to A for life, with remainder to his children living at his death, and, in default of children surviving A, then with remainder over to B, collateral inheritance tax is not assessable on a bequest by B to A of such ultimate remainder, until after the termination of the life estate.

A contingent remainder may be transmissible if in favor of a definite person; but it is not subject to collateral inheritance tax upon his death, until the contingency is favorably resolved.

Argued October 10, 1922.  Appeal, No. 98, Oct. T., 1922, by Frank Moss and Commercial Trust Company, substituted Trustee for Florian Moss, from decree of O. C. Phila. Co., Oct. T., 1900, No. 180, dismissing exceptions to adjudication in the Estate of Rebecca Moss, Deceased.  Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Reversed.

324    ESTATE OF REBECCA MOSS.

Exceptions to adjudication.   Before THOMPSON, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions.   Exceptants appealed.

*Error assigned* was the decree of the court.

*Paul C. Wagner*, and with him *Edward W. Madeira* and *Joseph S. Clark*, for appellants.—The interest in remainder passing from Mary Moss to Frank Moss was contingent: 23 R. C. L., section 97, page 552; Stump v. Findlay, 2 Rawle 168; Waddell v. Rattew, 5 Rawle 231; Buzby's App., 61 Pa. 111; Stewart's Est., 147 Pa. 383; Massey's Est., 235 Pa. 289; Tatham's Est., 250 Pa. 269; Hildebrant's Est., 73 Pa. Superior Ct. 255.

*J. Lee Patton*, attorney for William F. Campbell, Register of Wills, and with him *George Ross Hull*, First Deputy Attorney General, and *George E. Alter*, Attorney General, cited: Patterson's Est., 247 Pa. 529; Bassett v. Hawk, 118 Pa. 94; Wenrich's Est. (No. 1), 62 Pa. Superior Ct. 257; Massey's Est., 235 Pa. 289; Gelm's Est., 61 Pa. Superior Ct. 228.

OPINION BY KELLER, J., March 2, 1923:

Rebecca Moss died in 1899, leaving a last will and testament wherein she gave a portion of her estate to her executors in trust to pay the net income thereof to her brother, Florian Moss, during his life and upon his death directed that one-half thereof should be held in trust for the use of her brother, Frank Moss, "for his life and after his death to and among his children who may then be living, and the issue of such of them who may then be dead leaving issue, such issue, however, to take only such share as his, her or their parent would have taken if then living, but if my said brother Frank shall die either before or after me leaving no child or

issue of a deceased child him surviving, then for the use of my brother, William Moss, his heirs and assigns."

William Moss, died, a widower, on October 29, 1907, and left all his property, by will, to his daughter, Mary Moss.

Mary Moss died, unmarried, on April 2, 1914, leaving a will by which she gave her residuary estate, which included whatever interest passed to her in the estate of her aunt, Rebecca Moss, to her uncle, the said Frank Moss.

Florian Moss, the first life tenant above-named died on August 28, 1921. An account was filed by the Commercial Trust Company, substituted trustee under Rebecca Moss's will as aforesaid. At the audit of this account Frank Moss, the second life tenant, asked that the half of said trust fund, given in trust for him during his life, should be paid to him, claiming that under the facts above recited he was entitled to the fund as life tenant and also as ultimate remainderman, since he was 84 years old, his wife was 76 years old, they had no children and he was now physically incompetent of procreation, and hence the prior remainder, to his children and their issue, had failed. The orphans' court awarded the fund to Frank Moss upon the entry of his own bond to protect the interests in remainder, but held it was subject to the payment of collateral inheritance tax. It appeared at the audit that collateral inheritance taxes had been paid in the estate of Rebecca Moss on both the life estates and the estate in remainder in 1900. The question raised by this appeal is whether the estate in remainder passing from Mary Moss, by her will, to her uncle, Frank Moss, is subject to such tax.

It was held in Gelm's Estate, 61 Pa. Superior Ct. 228, that a vested estate in remainder was taxable under our collateral inheritance tax laws, but the estate subjected to tax in that case was an unquestionable vested estate, vested for all purposes and by all standards, and passed an absolute right of future possession. The testator in

that case gave his estate to his wife for life, and after her death to his four children, naming them. The estate passing to each child was absolute and subject to no contingency that could defeat it, and was certain to be enjoyed by the child or its representatives whenever the mother died. Such an estate at the death of one of the children was just as capable of certain and definite ascertainment for tax purposes as is a life estate. The estate in remainder created by Rebecca Moss's will is not of this absolute, certain and definite character.

The decisions in Pennsylvania, with respect to the nature of the remainder to William Moss—whether vested or contingent—are not uniform or in harmony.

Many of them hold that the remainder to William was equivalent to a vested estate subject to be divested by the death of Frank leaving issue. Among such are Etter's Est., 23 Pa. 381; Kelso v. Dickey, 7 W. & S. 279; Hopkins v. Jones, 2 Pa. 69; Bassett v. Hawk, 118 Pa. 94; and the late cases: Patterson's Est., 247 Pa. 529; Roney's Est., 227 Pa. 127; Neel's Est., 252 Pa. 394; Packer's Est. (No. 2), 246 Pa. 116; Wenrich's Est., 62 Pa. Superior Ct. 257. But even these cases recognize that such an estate is not absolutely vested or invariably fixed in the remainderman but is subject to be defeated by the happening of the contingency provided for in the prior remainder to Frank's children; in other words, that the interest bequeathed William is contingent. Thus in Kelso v. Dickey, supra, the court said (p. 284) : "The contingency on which the legatees over were to take was not a contingency annexed to their capacity to take; such, for example, as their living to a certain time; but an event independent of them, and not affecting their capacity to take or transmit the right to their representatives; and such a contingent interest has frequently been decided to be vested so as to be transmissible to representatives." In Hopkins v. Jones, supra, it was held that the second remainder was vested to the extent that it was transmissible to the remainderman's representa-

tives upon her death before the life tenant. The court said: "There is no contingency here that affects the transmissibility. There is a contingency which affects the right of Rebecca J. Rutter ever to take, but none that affects the vesting of her right or possibility, so as to pass to her representatives on her death, before the contingency happens." In Bassett v. Hawk, supra, the court said: "It is true the remainder was in abeyance, and so remained, until the decease of the life tenant, but as was said in Kelso v. Dickey, 7 W. & S. 279, the contingency was not attached to the capacity of the remaindermen to take, but to an event independent of, and not affecting either their capacity to take, or to transmit the right to their representatives." The contingency or uncertainty of such an interest is expressly recognized in Roney's Est., supra; Neel's Est., supra; Patterson's Est., supra, and many other kindred cases.

On the other hand there are many decisions which hold, as the writer thinks, to the more scientific view, that a remainder such as is created in this will is a contingent remainder with a double aspect or on a double contingency. These cases, for the most part, were concerned with the character of the estates in remainder before the particular estate was determined, and without regard to their transmissibility by will or descent.

Thus in Stump v. Findlay, 2 Rawle 168, there was a devise to testator's son John during his natural life and after his death, if he died leaving lawful issue to his heirs as tenants in common; but if John died without leaving lawful issue, then to his son James, his heirs and assigns. The Supreme Court held both remainders to be contingent and that neither could become vested until the death of the life tenant. In Waddell v. Rattew, 5 Rawle 231, there was a devise to A. during the term of his natural life; if he should have issue of his body lawfully begotten, then to such issue; in case he should die without leaving such issue, then to all the rest of testator's children. It was held that the ulterior limitation to the

rest of testator's children was contingent.  In Buzby's
App., 61 Pa. 111, 115, the court said: "Thus a limitation
to A. for life, remainder to his issue in fee, and in default
of such issue, remainder to B., the remainder to B. is
good as being collateral to the contingent fee in the
issue; it is not a fee mounted upon a fee, but it is a con-
tingent remainder, with a double aspect, or on a double
contingency."  In Dunwoodie v. Reed, 3 S. & R. 435, a
clause similar to this one was held to create concurrent
contingent remainders or a contingency with a double
aspect and the court said: "Where both [remainders]
are limited alternately on the same event, by the happen-
ing of which one is to vest in exclusion of the other, there
both are contingent remainders."  p. 452.   The court
followed the English case of Loddington v. Kime, 1
Lord Raymond 209, 1 Salkeld 224, which it cited as "of
unquestionable authority," (p. 441), where there was a
devise to Evers Armyn for life and in case he should have
any issue male then to such issue male and his heirs
forever, and if he should die without issue male, then to
Sir Thomas Barnardiston and his heirs forever, and it
was decided that Evers Armyn took for life with a con-
tingent remainder to his issue male in fee and that the
limitation to Sir Thomas Barnardiston was a contingent
remainder not contrary to or derogatory from the effect
of the former but by way of substitution for it.   The
ruling in Loddington v. Kime was confirmed by the
House of Lords in Barnardiston v. Carter, 2 Brown's
Parliamentary Cases 1, where the same will was under
consideration but with reference to another manor and
the ulterior remainder was declared a contingent re-
mainder, (p. 15).   Similar rulings were likewise made
in Goodright v. Dunham, 1 Douglas 264, where Lord
Mansfield expressed no doubt that both were contingent
remainders (p. 267) and Doe v. Holme, 2 Blackstone
Reps. 777.   Mr. Fearne in his standard work on "Con-
tingent Remainders" calls it a contingency with a double
aspect (Vol. 1, p. 373, 4th American Ed.).   In Stewart

v. Neely, 139 Pa. 309, there was a devise to K. W. for life, remainder to her children surviving her at her decease; in default of such children to S. W. in fee. In the opinion of the Supreme Court S. W.'s interest is called a contingent remainder (p. 316), and in Eachus's Appeal, 91 Pa. 105, p. 108, the limitation over is called a "contingent limitation." In Westhafer v. Koons, 144 Pa. 26, a remainder similar to that given William Moss was called contingent: "It is very evident that there is a remainder contingent upon Mary Ann dying without issue. Should she have issue, the remainder to William, Susan, Amanda & Wilhelmina would be worthless." p. 32. See also Fetrow's Est., 58 Pa. 424, 427; Wetherill's Est., 214 Pa. 150, 153; and Frasier v. Scranton Gas & Water Co., 249 Pa. 570, 573.

Certainly such a remainder is contingent within the definition in Blackstone's Commentaries (Vol. II, p. 169) in that it is limited to take effect upon a dubious and uncertain event, viz, the death of Frank Moss without children or their issue surviving him; and is not vested within the definition in Bouvier's Dictionary (Rawle's 3d Revision, 2869) : "A vested remainder is one by which a present interest passes to the party, though perhaps to be enjoyed in future, and by which the estate is invariably fixed to remain to a determinate person after the particular estate has been spent." To the same effect, see 21 C. J. 988; and 23 R. C. L. 582.

Much of the want of harmony has, apparently, been caused by confusing the terms "vested" and "transmissible." All of the cases which hold such a remainder to be vested, subject to be divested, etc., were concerned with the distribution of the estate after the death of the life tenant, without children or issue surviving him, and most of them with the transmissibility of the estate given the ulterior remainderman where he died before the life tenant; the question was not so much whether the remainder was vested as whether it was transmissible and passed to the remainderman's representatives upon his

·death before the termination of the particular estate. See Massey's Est., 235 Pa. 289, 293. It was not necessary to hold that such a remainder was vested, in order to be transmissible, for in Brooke's Est., 214 Pa. 46, it was decided that "Unless the contingency is one which affects the capacity to take, a contingent remainder or other contingent interest is transmissible, even though not, in the technical sense, vested: Gray on Perpetuities, section 118; and hence it will pass in case of death before the happening of the event upon which it is dependent, to the heirs or devisees of the remainderman so dying" (p. 48). This extract from the opinion of Judge Penrose, adopted by the Supreme Court, is in accord with the law as expounded by Chancellor Kent: "It is settled that all contingent interests of inheritance......where the person who is to take is certain, are transmissible by descent and are devisable and assignable. If the person be not ascertained, they are not then possibilities coupled with an interest, and they cannot be either devised or descend, at the common law. Contingent and executory, as well as vested interests, pass to the real and personal representatives, according to the nature of the interest, and entitle the representatives to them when the contingency happens," 4 Kent 262, 511. In Hinkson v. Lees, 181 Pa. 225, it was held that where the remainder though contingent was to a definite person the estate of such one dying before the life tenant was descendible and devisable, and in Chess's App., 87 Pa. 362, it was held that the fact that a devise passes an interest which is contingent does not affect the right of transmissibility unless the contingency is one which affects the capacity of the second taker.

Such remainders were, therefore, transmissible, descendible and devisable, whether they were technically vested or not and in holding them to be vested, it was this characteristic that was in the mind of the court, for in many of them, the holding is expressly so limited,

that is, they were held to be so far vested as to be transmissible.

There is no doubt, under the authorities, that the estate in remainder bequeathed to William Moss is transmissible. Whether it is technically vested, is another question. If it is a contingent remainder, collateral inheritance tax is not due on it, upon such transmission, until the contingency is resolved in favor of the ulterior remainder and the estate passes thereunder into the possession of the remainderman's representatives or legatees. But even if, under the decisions above noted, it is held to be a vested remainder, it does not follow that it is so far vested that payment of collateral inheritance tax upon it can presently be demanded from the legatees of the remainderman or his assigns in case of his or their death before they come into actual enjoyment thereunder. Both the Act of 1887 (May 6, 1887, P. L. 79) and the Act of 1919 (June 20, 1919, P. L. 521) provide in section 3, that where the bequest is to take effect in possession or come into actual enjoyment after the expiration of one or more life estates or a period of years, the tax on such estate shall not be payable, nor interest begin to run thereon, until the person liable for the same comes into actual possession of such estate by the termination of the estates for life or years; and the tax is to be assessed upon the value of the estate at the time the right of possession accrues to the owner; with a proviso, that he may voluntarily pay the tax at any time prior to his coming into possession, in which event the tax is assessed on the value of the estate at the time of payment. A second proviso directs that the "owner of any personal estate [passing from a resident decedent] shall make a full return of the same to the register of wills within one year from the death of the decedent, and within that time enter into security for the payment of the tax to the satisfaction of such register. In case of failure so to do, the tax shall be immediately payable and collectible." In Coxe's Est., 193

Pa. 100, the Supreme Court said, construing this section: "It is perfectly clear that those persons who do not take their estates until after the determination of a preceding life estate are not subject to any liability for the tax until they come into actual possession of their estates......If the tax shall not be payable until that event, it does not arise, it has no beginning, and hence the Commonwealth has no title to it and cannot demand its payment until the estate itself 'comes into actual possession' of the person entitled. And such coming into actual possession must be 'by the termination of the estates for life or years.'......The first proviso relates only to the case in which the owner desires to pay the tax before he comes into possession, and has no application here. It is under the second proviso only that the present contention arises......On its face and upon its plain meaning this proviso can only have application to the ordinary case of a devise or bequest to a person who is named and can be positively identified as 'owner' immediately upon the death of the testator, and also when the 'personal estate' which is subject to the tax can be fully described because the return of the estate must be made by the 'owner' within one year after the death of the decedent, and the estate must then be described in the return. Of course the great majority of cases are of this character, and the duty, and the person who is to perform it, can be readily indicated. But where it is impossible that the 'owner' who ultimately takes the estate can be known, or where from the peculiar character of the estate to be charged, it cannot be identified within the year, the proviso becomes incapable of application, and the consequence of immediate payment of the tax does not result......It is the actual possession of the estate which alone creates the liability to pay the tax, and that liability does not arise until after the termination of the life estate, under the express and positive terms of the act......In Roosevelt's Estate [143 N. Y. 120], BARTLETT, J., in the opinion, said: 'It is not to be as-

sumed that the legislature intended to compel the citizen to pay a tax upon an interest he may never receive, and the reasonable construction of this statute leads to no such unjust result. It does not follow because the legislature taxes persons beneficially entitled to property or income, in possession or expectancy, that a tax was thereby imposed upon an interest that may never vest; until that time arrives the power to tax does not exist ......In Hoffman's Estate [143 N. Y. 327], FINCH, J., said: 'For taxation is a hard fact, and should attach only to such ownership, and may properly be compelled to wait until chances and possibilities develop into the truth of an actual estate possessed, or to which there exists an absolute right of future possession.'...... Upon the whole case we are clearly of the opinion that the tax in the present case cannot be determined until after the expiration of the life estate of the widow, that it will not become due and payable until that event has transpired, and that it is the value of the property as it will then appear to be, that must constitute the basis upon which the tax must be declared."

This decision and the cases cited therein are authority for holding that an estate in remainder passing by will or descent at the death of the remainderman, in order to be subject to collateral inheritance tax payable at his death, must pass an absolute right of future possession, and be such as is invariably fixed to remain to a determinate person after the particular estate has been spent. The remainder in Gelm's Estate, supra, was such an estate.

It was held in Montgomery's Estate, 63 Pa. Superior Ct. 318, that where a will created life estates and estates in remainder, and the will itself showed that the persons who would ultimately take could not be ascertained until after the death of the life tenants, an appraisement for collateral inheritance tax purposes on the entire estate could not be sustained. It is just as essential for the purpose of assessing the tax that the sub-

ject of the estate passing should be definitely identified and ascertained (Coxe's Est., supra, page 106), and this is impossible at a time when it cannot be known definitely whether anything will ultimately pass under the gift or legacy. The estate here sought to be taxed passed from Mary Moss to Frank Moss at the former's death on April 2, 1914, and was "vested," within the intendment of the Supreme Court decisions above referred to, just as effectually then as now. If it was then taxable it was his duty to make return thereof to the register of wills within one year and enter security for its payment or it became payable immediately and twelve per cent interest was demandable as a penalty for his failure to pay it. No one, at that time, would have seriously contended that such a contingent interest, uncertain as to its value and as to who would ultimately enjoy it, was then taxable simply because it passed under the will of Mary Moss as a part of her estate. The situation is not changed because of the death of the first life tenant and the payment of the fund to the second life tenant, upon his entering security to protect the remaindermen, for want of active duties in the trustee. The interest in Rebecca Moss's estate which passed under the will of Mary Moss is still contingent and uncertain and will be until the death of Frank Moss determines whether any children survive him. The impossibility of his having children at his advanced age is not to be determined by the court in advance of his death: List 'v. Rodney, 83 Pa. 483. The situation is not changed by reason of the fact that Mary Moss's legatee happens to be the life tenant during whose life the uncertainty as to the ultimate remainderman must continue. If it had been a third person, the tax would not be assessable or payable until after Frank Moss's death, and if the latter died without children, it would then be assessed on its value at that time and paid by the trustee on the distribution of the trust fund, or by the life tenant's representatives if the fund had been paid to him upon his entering security for

the protection of the remaindermen. The same rule should apply here. The tax is not now payable, but if Frank Moss dies without children, the remainder will then take effect in possession and actual enjoyment by Mary Moss's legatee, or his representatives, and the tax will then be payable to the Commonwealth; and, if the estate is turned over to Frank Moss as life tenant, security should be entered by him to protect the Commonwealth in its right to the tax when it accrues, as a part of the distribution of the estate on the death of the life tenant.

The decree is reversed and the record is remitted to the court below for proceedings in accordance with this opinion. Costs to be paid out of the fund.

HENDERSON, TREXLER and LINN, JJ., concur in the judgment.