**Griscom Estate**

*Roland Fleer, Richard W. Ledwith* and *Stanley L. Thornton* for accountants.

*Edward J. Ozorowski,* for Commonwealth.

TAXIS, P. J., May 23, 1962.—The first account of Fidelity-Philadelphia Trust Company, George H. Emerson, and Margaret A. Neall, trustee, as stated by Fidelity-Philadelphia Trust Company and Margaret A. Neall, surviving trustees, and Edith Emerson, substituted trustee, was examined and audited by the court on September 25, 1961.

The reason or purpose for the filing of the account now before the court is the death of Gladys H. Griscom, a life-tenant, who died on May 10, 1960. . .

The trust was created from one of four equal parts of decedent's residuary personal estate. Dora I. H. Griscom died on October 16, 1939, and in her will provided, after prior life estates had expired, that the principal of the trust should be paid "to such person or persons as my daughter Gladys H. Griscom shall by her Last Will and Testament . . . limit and appoint . . ." Glady H. Griscom, in her will, exercised the power of appointment in favor of persons who are collaterals of Dora I. H. Griscom.

Although transfer inheritance tax has been paid on the clear value of the entire estate at the rate of two percent, the amount due according to the official appraisement filed April 1, 1940, the Commonwealth now claims additional tax on the property passing for the benefit of the said collaterals. The trustees, on the other hand, cite Darsie Estate, 354 Pa. 540, as controlling. They point out that the tax certificate filed at the audit of the executors' account in this estate on June 2, 1941, certified "that the tax assessed has been paid in full."

In Darsie Estate, supra, the life-tenant was decedent's widow, and had a power to consume principal. Any unconsumed principal was to pass to collaterals

under decedent's will. A two percent tax was paid on the entire value of the estate and no reservation was made by the Commonwealth of any right to assess further tax. The latter fact was held to be controlling, resulting in no added liability.

The procedure for the assessment and payment of inheritance taxes on future interests is well established. Section 3 of the Act of June 20, 1919, P. L. 521, 72 PS §2304, postpones the time of payment of the tax on a future interest," . . . until the person liable for the same shall come into actual possession of such estate . . ." This section further provides that the value of the taxable property shall be determined at the time the right of possession accrues, and gives the owner the right to prepay the tax, to avoid the effect of fluctuations in value. It is clear that an appraisement which purports to be a final determination of the value of the property appraised and the rate assessed is conclusive, and may not be opened or reconsidered apart from the usual appeal procedure: Reynolds Estate, 359 Pa. 616.

From this approach Darsie Estate rules the case. Similar fact situations have led to similar results, in Kerr Estate, 26 D. & C. 2d 130, and in Castner Estate, 26 D. & C. 2d 207. In Kerr Estate, the court said at page 144, "There is nothing whatsoever in the original appraisement and the register's written assessment and claim for tax presented at the audit to indicate that it was not intended to be a final appraisement and assessment, and we so find. . ." The court was not disturbed by the fact that the first adjudication specifically stated that the Commonwealth "Will have the right to claim additional transfer inheritance tax on such portion of the estate as might vest in the York Hospital at some future time." That statement was held to be "purely voluntary and not made in adjudication of any rights claimed, or reservations made, by the Commonwealth." It is, therefore, apparent that the Common-

wealth must act affirmatively to prevent an appraisement and assessment from being final and conclusive.

The Commonwealth generally acquiesces in this law, but contends that its application is limited to those situations where there is no possibility that future circumstances might affect the rate of tax to be imposed. The Commonwealth points out that at the time of the death of Dora I. H. Griscom there was no way to determine to whom the remainder of the estate would be appointed. The conclusion sought from this is that, in such circumstances, no assessment could possibly purport to be a final determination of tax liability.

As support for this contention, Reynolds Estate, supra, is cited. This case, however, is immediately distinguished from the one at hand by the express reservation in the appraisement of a right to assess additional tax on a remainder which might pass to collaterals. The Commonwealth also cites the Estate of Rebecca Moss, 80 Pa. Superior Ct. 323, but that case deals with the taxability of successive future interests to the estates of their owners, and has nothing to do with the matter of reappraisal in the same estate. In Reynolds Estate, reappraisement and reassessment at a higher rate was allowed, but the reason for this holding is revealed by this language on page 620: "Where, as in this case, the register is unable to ascertain until the death of the life tenant what portion of the estate is subject to a 2% tax or to a 10% tax, his express reservation of the '. . . right to appropriately tax any distribution made upon the death of the Life Tenant . . .' clearly and unequivocally preserved his authority to make a re-appraisement and assessment upon the death of the life tenant." Thus, the inability to determine the appropriate tax rate at the death of decedent will justify a reservation of the right to reassess, but will not justify reassessment without such a reservation. See also Samole Estate, 12 Fiduc. Rep.

207, where the right to reassess was reserved, and Reynolds Estate was held to be controlling.

This question is appropriately before the court at this time, as final distribution in this trust is at hand. The contention of the Commonwealth is an attempt to compensate for a deficiency in procedure that existed until Darsie Estate, supra, was decided. The effect of that case is evident in the inheritance tax certificates now issued by register of wills, wherein any possibility of a transfer to collaterals is reflected in a reservation of the right to reassess. No authority presently before the court, however, indicates that Reynolds Estate overruled Darsie Estate, and the later reported cases indicate the opposite. I therefore find that the original appraisement and assessment were final, and that the inheritance tax in this estate has been paid in full. . .

The net ascertained balance of principal and income for distribution are awarded to Fidelity-Philadelphia Trust Company and Margaret A. Neall, trustees under the will of Gladys H. Griscom, deceased.

The account is confirmed, and it is ordered and decreed that Fidelity-Philadelphia Trust Company and Margaret A. Neall, surviving trustees, and Edith Emerson, substituted trustee, forthwith pay the distributions herein awarded.

And now, May 23, 1962, this adjudication is confirmed nisi.