# Hellerman's Appeal.

It is an established rule in the construction of wills, that, where it is evident the testator has not expressed himself as he intended and supposed he had done, and the effect is produced by the omission of some word or words, and where it is certain beyond reasonable doubt what particular words were thus omitted, they may be supplied by intendment and the will read and construed as if these words had been written in the place or places where they were intended to have been written.

January 4th, 1887.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.  CLARK, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of January Term, 1886, No. 175.

Appeal by William Hellerman from the decree of the Orphans' Court of said county, confirming the report of a Master, A. Atwood Grace, Esq., and decreeing that he, William Hellerman, pay the arrearages of yearly charges imposed by John Hellerman upon certain real estate to the executor of the widow of the said John Hellerman.   The following are the facts as they appeared in the court below as appears from the petition.

On the tenth day of May, 1884, J. Evan Zorns, executor of the will of Catharine Hellerman, deceased, filed a petition in the Orphans' Court of Philadelphia, setting forth that Catharine Hellerman died on the 16th of August, 1882, leaving a will which was proved, etc.   That the said Catharine was the widow of John Hellerman, deceased, who died in 1867, seized of divers pieces of real estate in Philadelphia and elsewhere. That by his will, duly proved and registered on the 6th July, 1867, he did among other things provide as follows : " I give, devise, and bequeath unto my son William Hellerman my farm or tract of land situate partly in the Twenty-third Ward of the city of Philadelphia and partly in the township of Cheltenham, in the county of Montgomery and state of Pennsylvania, containing thirty-five acres more or less, bounded . . . . . together with the stock and farming implements upon the same, to have and to hold the same unto him, the said William Hellerman, his heirs and assigns forever, under and subject to the payment of the sum of $125 unto my widow Catharine for and during all the term of her natural life." And of his will he did make his son William Hellerman and his son-in-law David Williams the executors, to whom letters testamentary were duly granted.   That in the said will there are two other devises of land to two daughters and their husbands respectively of the said testator, both of which contain the words following, to wit : " Under and subject to the pay-

ment of the sum of $125 *per annum* unto my wife Catharine, for and during the term of her natural life."

That the said William Hellerman is the son of the said testator and his wife, Catharine Hellerman, deceased. That immediately after his father's death, he, William Hellerman, took possession of the said tract of land, and has continued to hold the same ever since under the said devise in the will. That it was the intention and will of the said testator to charge the land devised to his son William Hellerman with the payment of an annuity or yearly sum to the said Catharine Hellerman for and during the term of her natural life, but that by a mistake the words "per annum" were omitted in the will; that the words are contained in the devise to Jacob Fleshour and Annetta his wife and in the devise to Nathan L. Nice and Sarah his wife, the said Annetta Fleshour and Sarah Nice both being daughters of the said testator; and that it was plainly the intent of the said testator to charge the land given respectively to each of his three children with the sum of $125 per annum to be paid to their mother for her support and maintenance during life. That immediately after his father's death the said William Hellerman, having taken possession of the land, paid to his mother, the said Catharine Hellerman, the sum of $125 annually for the years 1868, 1869, 1870, 1871 and 1872, in discharge of the said annuity, but that he neglected and refused to pay the sum which became due in the year 1873, and has neglected and refused to make any payment thereof at any time since, and that there was due and unpaid to the said Catharine Hellerman at the time of her death, on the 16th August, 1882, arrears of said annuity for nine years and four and one half months, amounting to the sum of $1,171.87, with interest thereon from the time when the respective payments thereof became due. And prayed that notice be given to William Hellerman and David Williams, the executors of John Hellerman, deceased, and to the said William Hellerman, the devisee under the said will, and to such persons as may be interested in the estate as justice may require, and to make such order and decree touching the payment of the said arrearages of said annuity, yearly payment, or testamentary charge due to the said Catharine Hellerman at the time of her decease, as the court may deem requisite and just. Whereupon the said Orphans' Court issued a citation to William Hellerman and David Williams, executors of John Hellerman, deceased, and William Hellerman, devisee of John Hellerman, deceased, "to show cause why the arrearages of the annuity, yearly payment, or testamentary charge charged upon the land devised to William Hellerman in favor of and due to Catharine Hellerman (widow of John

Hellerman, deceased,) at the time of her decease shall not be ordered to be paid as prayed for."

To the petition and citation issued as aforesaid the said William Hellerman and David Williams, executors of John Hellerman's estate, and the said William Hellerman as devisee under said will, filed an answer setting forth, first, the item of the will containing the devise to William Hellerman; secondly, a denial that it was the intention of the testator to charge said land devised to his only son William Hellerman with the payment of a yearly sum of $125, and that the words "per annum" were omitted in the said will by mistake and because some other farms or properties devised to other of his children are each charged with the payment of $125 per annum during the life of the widow of the testator.

That the respondents are informed and believe that the will was carefully drawn and executed, having been done under the care and direction of Josiah Kerper and Samuel Wakeling, Esquire, and the devise to William Hellerman was made by said testator after careful deliberation and with a full understanding, and with the clear intent that but one payment of $125 should ever be made by said devisee.

To this answer a replication was filed by the petitioner joining issue on the matters alleged in the answer. On 28th June, 1884, the Orphans' Court, upon application of the petitioner, referred the matter to A. Atwood Grace, Esq., as examiner and Master to take testimony and report upon the expediency of granting the petition. On the twentieth day of December, 1884, the Master filed in the Orphans' Court his report, with the exceptions thereto filed on behalf of the respondents.

His report was *inter alia* as follows:

In Redfield on Wills, vol. 1, page 454, section 33, it is said: "It is an established rule in the construction of wills, that, where it is evident the testator has not expressed himself as he intended and supposed he had done, and the defect is produced by the omission of some word or words, and where it is certain beyond reasonable doubt what particular words were thus omitted, they may be supplied by intendment, and the will read and construed as if those words had been written in the place or places where they were intended to have been." To show how the authors of the works upon the subject of wills agree in this rule, the words of Mr. Jarman, which are almost the same as those of Judge REDFIELD, also are cited. In vol. 2, page 60, he says: "It is established that (where it is clear on the face of a will that the testator has not accurately or completely expressed his meaning by the words he has used, and it is also clear what are the words which he had omitted, those

words) may be supplied in order to effectuate his intention as collected from the context." "To effect the clear intention as apparent upon the whole will, words and limitations may be transposed, supplied, or rejected:" Williams on Executors, 1085. See also Ward on Legacies, 243. "But words are to be supplied only when the intention of the testator is clear and the words necessary to his meaning. There must be manifest and convincing proof that the omission was contrary to the intention of the testator:" Jarman on Wills, vol. 2, page 60, note *a*. "We cannot," said Lord MANSFIELD, in Chapman *v.* Brown, 3 Burr., 634, "from arbitrary conjecture, though founded on the highest degree of probability, add to a will or supply an omission in it. But we may construe a will, and from what is expressed necessarily imply an intent not particularly specified in the words," cited with approval by Chief Justice GIBSON in Long *v.* Labor, 8 Barr, 229–232. "You cannot by mere construction incorporate distinct provisions into the will, however it may be that they were omitted by mistake; but the defects to be supplied by construction must be such as necessarily suggest themselves from the words used, as the only reasonable and sensible meaning fairly deducible from the whole instrument:" Redfield on Wills, 465.

"The intention of the testator is to be gathered from the entire instrument, and to effect the clear intent on words and limitations may be transposed, supplied, or rejected when warranted by the immediate context or the general scheme of the will." Judge HANNA, in Hallowell's Estate, 11 Phila., 55. Mr. Justice THOMPSON in McKeehan *v.* Wilson, 3 P. F. S., 74, said, "It is a cardinal rule in the construction of wills that the intention of the testator as developed by the will must control. If this were not true the paper would not be the will of the decedent. It sometimes happens, however, that through ignorance or mistake of the testator or drawer of the will, words are omitted or inserted which have left unexpressed or wrongfully expressed what clearly appears to have been the intention of the devisor from the whole tenor of the will, and which are necessary to carry it out. The rule in such cases is well settled that the courts will permit the will to be read as if the words omitted were inserted and those wrongfully inserted omitted, and in the place or places where they were intended to have been inserted or omitted. Having given the views of the learned authors upon the subject and of the judges of the courts who have had occasion to examine into it, the Master now takes up and considers some of the cases in which the principle has been enunciated, in order to see practically to what extent the courts will go in applying the rule as to which the authorities cited above all agree.

In Doe d. Compere *v.* Hicks, 7 Term R., 437, the words "during the lives of the several tenants for life" were inserted. In Spelding *v.* Spelding, Cro. Car., 184, the words "without issue" were inserted. In Fonerau *v.* Fonerau, 3 Atk., 315, words of limitation over after the death of a child were supplied by Lord HARDWICKE. In these cases, as was said by Lord ELLENBOROUGH in Doe d. Leach *v.* Micklen, 6 East, 494, the structure of the sentence was perfect without any alteration or addition of words, yet, as the intention of the testator clearly indicated that they were omitted by mistake, the court supplied the words. In the case last cited the words "and after her death" were inserted in order to carry out the intention. In Abbot *v.* Middleton, 21 Beav., 143, there was a bequest to testator's widow for life and on her decease to his son for life and on his demise the principal to become the property of any children he might have. Then followed a gift over in case the son died before his mother (omitting the words "without leaving children"). The son died before both his father and mother, leaving an only child, who survived them. It was held, that such child was entitled to the principal sum after the grandmother's death, and that to effectuate the intention of the testator the words "without leaving any child" were implied, Sir John Romilly saying: "It may be stated as a general rule that wherever the context requires it, words may be supplied, changed, and transposed."

In Graham *v.* Graham, 3 Clark, 212, the words "or death," inadvertently omitted, were supplied to effect the intention of the testator; in Holland's Estate, 6 W. N. C., 469, the word "and" was supplied by the Orphans' Court of Philadelphia county, where the testator's intent was evident but was incorrectly expressed; words were transposed in Zerbe *v.* Zerbe, 3 Norris, 147; in Dew *v.* Barnes, 1 Jones Eq., 149, the words "two sons" were supplied to carry out the intention and correct a mistake: see also Tayloe *v.* Johnson, 63 N. C., 381. In Reid *v.* Hancock, 10 Humph., 368, testator made a bequest as follows: "I give to my wife all my property during her widowhood, until my children become of lawful age; after that event I wish it equally divided among them." It was manifestly the intent of the testator to give all his property to his wife during her widowhood, or until his children should arrive at lawful age, and on the happening of either of these events to divide it equally between his wife and children, and to carry out the manifest intention the court said they would supply words and disregard strict grammatical construction. The case which, from the liberality of its ruling and from its similarity to the one in hand, should have great weight in deciding the present controversy is Redfearn *v.* Hall, reported in

25 W. R., 902, also in 37 L. T. N. S., 241, and also in L. R., 6 Ch. Div., 1331, decided in 1877.

The Master therefore reported that the words "per annum" should be supplied in the will in the charge of $125 imposed upon the devise to William Hellerman. This report and the exceptions filed by the respondent came before the Orphans' Court for argument and consideration, whereupon that court, on the 24th day of January, 1885, through HANNA, P. J., delivered the following opinion :—

"Without passing upon the sufficiency of the exceptions at the present time, we think there should be further testimony explaining, if possible, the long delay of the widow in demanding payment of the annuity alleged to be charged upon the farm devised to her son. As her legal representative occupies no better position than she did, any presumption arising from lapse of time ought to be overcome by satisfactory evidence. The exceptions are therefore sustained *pro forma*, and the report of the Master and examiner recommitted to him to permit further testimony to be submitted by petitioner and respondent if they desire, with leave to either to file the same or additional exceptions, if they think proper, to the further report of the master."

On the 10th day of June, 1885, the Master filed his supplemental report with the exceptions thereto filed with him on behalf of the respondent. He reported that the prayer of the petitioner should be granted, and annexed a decree to his report in conformity therewith. Afterwards, on the 18th day of July, A. D. 1885, the said exceptions were dismissed, the Master's supplemental report adopted, and the decree recommended therein made by the court, ASHMAN, J., filing the following opinion :

To two of his children the testator devised in fee two pieces of real estate, and subjected each tract to a yearly charge of $125, in favor of his widow during her life. To a third child he devised a farm of thirty-five acres including a mill pond, in fee simple, subject to the payment of the sum of $125, unto my widow Catharine, for and during all the term of her "natural life." The last named devisee, after paying this amount during eight consecutive years, declined to make further payments, alleging that the charge imposed by the will was of a single gross sum of $125.

The clause in question betrays no latent ambiguity respecting which we may call in the aid of extrinsic testimony. It is not obscure in the sense in which the devise was so held in Ryers *v.* Wheeler, 22 Wend., 148, where a testator gave his "backlands" to various devisees, and where evidence was admitted to show the local meaning of the word. But as part

of a testament which we are bound to consult in its entirety, in order to ascertain the intention of the donor, this clause is manifestly incomplete. The testator could scarcely have intended, after imposing in favor of his widow the yearly sum of $125 on each of two tracts, to charge a third tract, more valuable than either, with only the annual interest of that sum. He could as little have intended the imposition of a single sum of $125, because the payment he prescribed was to be a continuing one; it was to be made not only "for" the life of the widow, but "during" her life. The authorities which the Master has collected, and to which we may add the cases of Dodson *v.* Hay, 3 Bro. C. C., 405, and Sidney *v.* Shelley, 19 Ves., 352, are clear to the point that the words "per annum" which appear in the other devises and are missing in this, shall be supplied by the court.

It was not essential to the proper determination of this question that the apparent failure of the widow to claim the arrears which accrued before her death, should be explained. Her sensibilities as a mother may very naturally have restrained her from actively proceeding against her child. When the case was recommitted to the Master for testimony upon this point, the apparent delay was much greater than the actual satisfactory proof of three years' additional payments being afterwards produced. We are not called upon, therefore, to pass upon the competency as a witness of the executor of the widow's will.

The exceptions are dismissed, and the decree attached to the Master's supplemental report is adopted.

The following decree was accordingly entered:

And now, July 18th, 1885, the report of A. Atwood Grace, Master, having been filed, upon consideration thereof the court order, adjudge and decree that the said report be confirmed, and that the respondent, William Hellerman, pay unto the petitioner, J. Evan Zorns, executor of the last will and testament of Catharine Hellerman, deceased, the sum of one thousand two hundred and ninety-three dollars and seventy-three cents with interest thereon from June 2d, 1885, being arrearages of a yearly charge or annuity imposed by the decedent, John Hellerman, upon the farm or tract of land situate partly in the Twenty-third ward of the city of Philadelphia and partly in the township of Cheltenham in the county of Montgomery and state of Pennsylvania, containing thirty-five acres more or less, bounded by land of Isaac Gilham, Amasa Hellerman and others, and the Mill Road, devised to the said William Hellerman, which said sum is the aggregate of the several annual payments found to be due from the date of the last payment, to wit, April 1st, 1875, until the death of the said

Catharine Hellerman, to wit, August 16th, 1882, together with interest upon the same from the dates when the said payments respectively became due and payable, and that the said William Hellerman, respondent, also pay unto the said J. Evan Zorns, executor as aforesaid, the costs of these proceedings; and in case the same shall not be paid within one month hereof, the payment thereof shall be enforced by a writ of *levari facias* against the above described land devised to the said William Hellerman.

William Hellerman thereupon took this appeal assigning the above decree for error.

*William Hopple* for appellant.—It is submitted that the intention of the testator in this case was that but $125—one payment—without direction as to how or when it should be made by the devisee to his mother.

To insert the words " per annum," is to insert a charge the testator never imposed.

Had he intended to have created such a charge, he surely would have observed the omission, sandwiched as this devise was between two others in his will.

The widow released her son from all liability to pay this sum annually. She told her granddaughter, Josephine Hellerman, that her father (the appellant) " didn't have to pay any more of that money."

That as there would be no more money to pay, we should take that money and come to see her oftener, as she was very lonely.

Catharine Hellerman could certainly release, and she did release, her son from payment of this $125, if she was entitled to it annually under the will.

*A. S. Letchworth* (*Henry Trumbore* with him), for appellee.—The intention of the testator, manifestly, was to make the three devises, that is, the devises to the two daughters and their husbands, and the one to William Hellerman, each subject to an annuity of $125 to the widow, for and during the term of her natural life. And it was certainly understood so to be by William Hellerman, the devisee, who, for six consecutive years after testator's death, paid the said annuity to his mother. Upon any other construction, the words of the devise, "for and during all the term of her natural life," would have no meaning whatever.

The widow, during her lifetime, did not release the devisee from the payment of this annuity. In his answer to the original petition, William Hellerman did not aver or claim a

release, and the Master has found that, in point of fact, there was no release.

Mr. Justice TRUNKEY delivered the opinion of the court March 21st, 1887.

The language of the will must be interpreted according to its proper acceptation, or with as near approach to that acceptation, as the context and state of the circumstances existing at the time of its execution will admit. A mistake in the will cannot be corrected, unless it clearly appears by fair inference from the whole. In this court the appellant has not contended that parol evidence is admissible of the actual intention of the testator for the purpose of controlling or influencing the construction of his will.

This will contains seven "items," and only the fifth contains no bequest to the testator's wife. He first bequeaths to her all his personal estate, except a specified portion. The second and fourth items contain devises of real estate, each "subject to the payment of the sum of one hundred and twenty-five dollars per annum unto my widow, Catharine, for and during the term of her natural life." In the third item real estate is devised to William Hellerman, "subject to the payment of the sum of one hundred and twenty-five dollars unto my widow, Catharine, for and during all the term of her natural life." In the sixth item the testator provides that in case his daughter Caroline should die before his widow, that his widow shall have the rents and profits of certain land "during the term of her natural life." And in the seventh item the testator devises his homestead farm, subject to the right of his widow, Catharine, to reside on the same "during the term of her natural life," and to receive one third of the rents and profits "during her life."

After having made five annual payments of one hundred and twenty-five dollars to the widow, the appellant discovered that the words "per annum" had been omitted in the clause creating the charge on the land devised to him. Being interested, he naturally inferred that the words in said clause, "during all the term of her natural life," were meaningless, though so often used in their proper sense in other parts of the will where money and rents are directed to be paid to her during said period. That he did not sooner discover the omission is not surprising. It seems plain that he took the land, subject to an annual payment during the life of the widow.

The testator used apt words to express his intention, and the several devises, subject to annual payments to the widow, are in similar phrase as respects the duration of the charge. Had the testator intended to charge one devise with a single small

[Johnson's Appeal.]

payment, he would have simply directed its payment to his widow, and not have repeated that phrase, omitting a word, thereby rendering the phrase senseless. It is a fair inference from the whole will that the words "per annum" were omitted from said clause by mistake.

It is unnecessary to repeat the reference to the authorities, made by the Master and court below, which establish the principle that a word may be supplied when it is a clear inference from the whole will that it was omitted by mistake.

Decree affirmed, and appeal dismissed at costs of the appellant.