Riegel et al., Appellants, *v.* Oliver et al.

Argued April 9, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas Ross*, with him *John Ross* and *Ross & Ross*, for appellants.

*Wm. H. Satterthwaite, Jr.*, with him *Bunting & Satterthwaite*, for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 21, 1945:

This is an appeal from the dismissal of a bill *quia timet*, the cloud on the title being claims by defendants under the will of John L. Riegel.

John L. Riegel died testate in 1893. His will was dated in 1890. He was survived by three daughters, three sons, and a grandson (child of a deceased daughter). In separate paragraphs of his will, testator made specific devises of three farms, one to *each* of his three daughters for life, with remainders to their respective children, *if any*, and upon the happening of a contingency hereinafter recited, then to a named son. Certain

shares of stock were bequeathed under similar provisions.

The question involved relates to title to a farm and shares of stock bequeathed to a daughter, Ida Josephene, for life. The relevant language requiring construction is in the sixth item of the will reading: "I give and devise to my daughter Ida Josephene the farm . . . during the term of her natural life . . . and after the death of my said daughter Ida Josephene then I do give and devise the same to her lawful children, if any, and to the survivor of them forever, but if all of said children, if any shall die without lawful issue before attaining the age of twenty-one years then I do give and devise the same to my son George E. forever. . . ." The gift of the life estate and remainder of the shares of stock is similar to the devise of the farm and will not be recited.

Ida Josephene, the life tenant, died in 1941. *She had neither married nor had children.* The son George E. died in 1933, after testator, but in the lifetime of the life tenant.

The single question is whether the language of the will, considered as a whole, sufficiently indicates testator's *implied intent* to devise the real estate to the son in the event that the daughter never had children. In *express words,* the son is devised the fee if all of the daughter's children died without issue. There are no *express words* devising the real estate to the son if the daughter never had children.

The learned chancellor, despite his expressed personal conviction to the contrary, was unable to discover *from the language of the will* such implied intent. With this we disagree.

From a reading of the entire will and an examination of the testamentary scheme, it appears plain that the devise to the son was contingent upon the event of the death of the daughter without leaving children or their issue. There is nothing in the will which indicates the

slightest intent to differentiate between a failure of issue caused by the *death* of children and where *no children were born* to the daughter. To us the intent was manifest from a reading of the entire will that it was the failure of the daughter to leave issue which entitled the son to take.

It is true that a will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of the testator as extracted from the whole will should follow from so reading it: *Bender v. Bender,* 226 Pa. 607, 75 A. 859; *Long v. Stout,* 305 Pa. 310, 157 A. 607; *McGraw's Estate,* 337 Pa. 93, 10 A. 2d 377; *Lenhart's Estate,* 344 Pa. 358, 25 A. 2d 725; *Canfield's Estate,* 109 Pa. Superior Ct. 329, 167 A. 500. As pointed out by the learned counsel for the appellant, if a literal construction of the words were adopted an absurd result would ensue. If the daughter had married and had given birth to one child, and the child had died an hour after birth, the remainder would have passed to the son; whereas, if the same child had died an hour before birth and thus the daughter never having had any child born to her, the property would not go to the son. The learned chancellor agreed that such a "result is unquestionably, absurd and unreasonable". Where words used might under a given construction lead to a result which is highly improbable, the court will lean toward a construction that will carry out the natural intention of the testator. *Mayhew's Estate,* 307 Pa. 84, 160 A. 724; *Conner's Estate (No. 2),* 318 Pa. 150, 178 A. 15; *Hannach's Estate,* 332 Pa. 145, 2 A. 2d 711.

The law will impute to a testator's words such a meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice: *Jackson's Estate,* 337 Pa. 561, 12 A. 2d 338; *Shipley's Estate (No. 2),* 337 Pa. 580, 12 A. 2d 347; *Brown's Estate,* 343 Pa. 19, 21 A. 2d 898. A word or

words may be supplied where there is a clear inference from the whole will that the words were omitted: *Hellerman's Appeal*, 115 Pa. 120, 8 A. 768; *Jacobs' Estate*, 343 Pa. 387, 22 A. 2d 744; *Wittmer's Estate*, 151 Pa. Superior Ct. 274, 30 A. 2d 197; 2 Page on Wills (3rd ed.), page 861.

We do not regard the absence of express words relating to the death of the daughter without ever having had children, as evidence of an unprovided for event. It is true that the court may not provide for an event which appears to have been absent from testator's mind: *Filbert's Estate*, 195 Pa. 295, 45 A. 733; *Jacobs' Estate*, supra; *Davis's Estate*, 346 Pa. 247, 29 A. 2d 700. While testator's words may have been inaccurately chosen, it is manifest that he intended to pass this property to the son, should the daughter leave no children surviving her. This is indicated when the testator gave the property, after the death of the daughter, to her lawful children *"if any"*. Such words show that testator intended surviving children to take *if they existed*. The words of the will, regarded as a whole, reveal an *implied intent* on the part of the testator that the son was to secure this property in case his sister died without leaving children or their issue surviving. We are confirmed in this view by the words employed in disposing of the residue. There he gives the residue to his six named children and the grandson, share and share alike, the children, *if any,* to take their parent's share.

We therefore decide that upon the decease of the daughter, Ida Josephene, without leaving surviving children or their issue, the property passed to the estate of George E. Riegel.

George E. Riegel died in the lifetime of the life tenant. This remainder, though contingent, was transmissible. The quality of such an estate has been defined by the late Judge KELLER in the *Estate of Rebecca Moss*, 80 Pa. Superior Ct. 323, 326, et seq. It is "a contingent

remainder with a double aspect or on a double contingency". This case was cited with approval in *Mayer's Estate,* 330 Pa. 39, 43, 198 A. 439.

Concerning the shares of stock, it appears from this record that Ida Josephene possessed a legal life estate therein. Under such circumstances the owners in remainder would be required to proceed against the estate of Ida Josephene for the value of such remainder. If, however, as appears in this record, title to the stock is in fact held in Ida Josephene's name as trustee for her father's estate, it is quite possible that she took possession of the stock not as a life tenant, but as a trustee, and in such circumstances it might become necessary for the personal representative of Ida Josephene's estate to file her account as such trustee. See *Du Puy's Estate,* 346 Pa. 143, 29 A. 2d 689; *Erdman Estate,* 352 Pa. 158.

The decree of the court below is reversed; the bill is reinstated; the record is remitted with direction to enter an appropriate decree in accord with this opinion; each party to pay his own costs.