Lifter Estate.

Argued January. 13, 1954. Before JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Sigmund H. Steinberg,* with him *Blanc, Steinberg & Balder,* for appellant.

*Walter B. Gibbons,* guardian ad litem and trustee ad litem, appellant, in propria persona.

*Israel Packel,* for appellee.

OPINION BY MR. JUSTICE BELL, March 24, 1954:

The Federation of Jewish Charities presented to the Orphans' Court a petition for a declaratory judgment. All of the persons having any possible interest, present or remote, vested or contingent, were joined in the petition.

In *Eureka Casualty Co. v. Henderson,* 371 Pa. 587, 92 A. 2d 551, Mr. Chief Justice STERN said (pages 591, 592): ". . . whether or not a court will take jurisdiction of a petition for a declaratory judgment or decree is purely a matter of judicial discretion. . . . It was said in Capital Bank and Trust Company's Petition, 336 Pa. 108, 111, 6 A. 2d 790, 792; '. . . the

vital factor in the assumption of jurisdiction is the presence of antagonistic claims indicating imminent and inevitable litigation, coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy: . . .' "

The facts in the instant case bring it within the aforesaid requirements; the problems involved are so unusual and difficult, litigation was so imminent and inevitable, and the peril to the Federation was so great and immediate that we consider this to be an appropriate matter for a declaratory judgment.

Morris Lifter died August 16, 1948, leaving a wife, but no issue. His will dated January 24, 1947, was long and very involved—it covered 19 printed pages. Testator, after the usual provisions with respect to his debts and funeral expenses, made certain pecuniary gifts. In the 7th paragraph of his will he created a trust to pay $60 a month to his sister, who has since died, and gave all the rest of the net income to his wife for her life, with a discretionary power in the trustees to expend principal in her behalf. His wife is still living.

We then come to the pertinent and important provisions here involved: "EIGHTH: *Upon the death of my wife this trust shall terminate and the principal** of the same, as it may then be, *shall be paid over and distributed as follows*:

"A. Personal Bequests [There then follow 12 bequests, some of them conditional and detailed.]

"B. Charitable Bequests [Testator made 5 charitable bequests.]

"(C) Residuary Estate

"(r) All the rest, residue and remainder of the said trust estate shall be paid over to the Federation of

* Italics throughout, ours.

Jewish Charities of Philadelphia for the purpose of erecting, and provided they shall erect (beginning such erection within a period of not more than five years *from the date of my death*) a building for such humanitarian purpose or purposes as in the judgment of said Federation is most urgently needed *at the time of such distribution,* such building to be known as Morris and Effie B. Lifter Building; provided,

"1st—that if at the time of the death of my said wife, my said sister Annie Lang is living, the Federation shall bind itself legally to continue the payment to her of the sum of $60 a month as long as she lives; and provided,

"2nd—*that the building so to be erected shall be free of all mortgages and ground rents and shall be paid for fully with the amount bequeathed to the Federation by me.*

"In case the *conditions* of the foregoing bequest to the Federation of Jewish Charities of Philadelphia *are not met within 60 days from the date of my death* and the gift to the Federation therefore does not become operative, or if for any other reason or reasons the gift to the Federation does not become operative, then and in such case I direct that the remainder of my residuary estate shall be distributed among, and I give, devise and bequeath the same to, subject to an agreement among them to pay my sister $60 a month as aforesaid, those persons to whom I have made bequests under items (a) to (1) both inclusive, of this paragraph, each in the same proportion as the amount distributable to him, her or it, bears to the aggregate total to which all such persons are entitled to take under said items (a) to (1) both inclusive."

A reading of the will makes it apparent that some of the provisions in the Eighth Paragraph are conflicting or at least create uncertainty. We shall therefore

approach the problems in the light of the following principles:

The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances: *Lyle Estate*, 374 Pa. 344, 97 A. 2d 830; *Brumbach Estate*, 373 Pa. 302, 95 A. 2d 514; *Newlin Estate*, 367 Pa. 527, 80 A. 2d 819; *Anderson Estate*, 373 Pa. 294, 95 A. 2d 674.

A Court has no power to rewrite a will to supply a testator's unexpressed intent, or to cover circumstances or conditions or contingencies which he apparently did not forsee or provide for.

Moreover: "The Court is always reluctant to supply words of material import to a will: Elkins' Estate, 339 Pa. 193, 12 A. 2d 83. '. . . interpretation is never to assume the proportions of reformation. . .' " *Berger Estate*, 360 Pa. 366, 371, 61 A. 2d 855.

" 'Words and phrases may be supplied or rejected when warranted by the immediate context or the general scheme of the will, . . .': Bender v. Bender, 226 Pa. 607, 613. See also Jacobs' Estate, 343 Pa. 387, 392": *Davis's Estate*, 346 Pa. 247, 251, 29 A. 2d 700.

"A word or words may be supplied where there is a clear inference from the whole will that the words were omitted [by mistake]: Hellerman's Appeal, 115 Pa. 120, 8 A. 768; Jacobs' Estate, 343 Pa. 387, 22 A. 2d 744; Wittmer's Estate, 151 Pa. Superior Ct. 274, 30 A. 2d 197; 2 Page on Wills (3rd ed.), page 861": *Riegel v. Oliver*, 352 Pa. 244, 247-248, 42 A. 2d 602.

We shall first analyze, in the light of the foregoing principles, the various provisions of the residuary gift to the Federation contained in the Eighth Paragraph of the will. Mr. Lifter directed that the remainder of

his residuary estate, *which arose and became payable and distributable upon the death of his wife,* shall be paid to the Federation for the purpose of erecting and provided they shall erect, a building for such humanitarian purposes as in the judgment of the Federation is most urgently needed *at the time of such distribution.* Were that all of the testamentary provision its meaning would be clear. However, there was inserted after the word "erect" the following parenthetical clause which is the cause of the present controversy: "(beginning such erection within a period of not more than five years *from the date of my death*)". The appellants, who are the ultimate contingent beneficiaries, contend that this parenthetical clause was a condition precedent and that it necessitated and required, as, in its isolated context, it clearly and expressly stated, the Federation to begin the erection of such building within five years of the testator's death. Cf. *Thompson's Estate,* 304 Pa. 349, 155 A. 925; *Wanamaker's Estate,* 312 Pa. 362, 167 A. 592. It would be unlikely that the testator intended, and as it turned out, it would be impossible for the Federation to begin the erection of the building within five years of his death in the light of the other provisions of the Eighth Paragraph, because (a) the gift to the Federation takes place only upon the death of testator's wife and she is still living and (b) no one can possibly know until after his wife's death the kind of a building which will be most urgently needed *at the time of distribution of his residuary estate* (after his wife's death); and because (c) "the building so to be erected shall be free of all mortgages and ground rents and *shall be paid for fully with* the amount bequeathed to the Federation by me.", which as above noted was not payable until after his wife's death.

Appellants would avoid these conflicts and absurdities by the ingenious contention that the testator *meant*

*by the parenthetical clause* that the gift to the Federation should take effect only if testator's wife died within five years after his death, and only if the Federation commenced to erect the building within that five year period. The testator not only did not say that, but equally important, such a construction is contrary to and would utterly defeat testator's main intent, as well as the general scheme of his will, and it is so far-fetched and unreasonable that it cannot be adopted.

Testator further provided: "In case the *conditions* of the foregoing bequest to the Federation . . . are not *met* within 60 days from the date of my death and the gift to the Federation therefore does not become operative, . . . then and in such case I direct that the remainder of my residuary estate shall be distributed among, . . .". The Federation, as we have seen, did not commence erecting the building within the period of five years from testator's death, and obviously they could not pay for such a building in full with the testamentary bequest until they received it after his wife's death; but they did accept formally and in writing the bequest and agreed to the conditions thereof within 60 days from testator's death.

We hold that this was a sufficient compliance with the language, meaning and intent of this paragraph. The Federation has met or complied with the conditions or requirements. "Met" as used in this sentence does not mean "performed"; it means "agreed to".

We believe it is clear from a study of the entire will that the testator wished and intended (1) *generally*, (2) *particularly*, and (3) by the scheme of his will, to give the remainder of his residuary estate to the Federation of Jewish Charities, subject, however, to certain conditions: (a) provided they would erect a building for humanitarian purposes; (b) provided the building was known as "Morris and Effie B. Lifter

Building"; (c) provided the building so erected should be free of all mortgages and ground rents; (d) provided it would not cost more than the amount bequeathed to the Federation by the testator; (e) provided the erection of the building was commenced within five years after his wife's death; and (f) provided that the Federation would agree to accept the bequest with all its conditions within 60 days from the testator's death.

We are convinced that the parenthetical clause erroneously expressed testator's intention; and that it is clear from the language and scheme of his entire will that the word "wife's" was omitted by mistake from the parenthetical clause; and that his intention was, as found by the auditing Judge and the Court en banc, that the building in question should be commenced within a period of five years from the date of "my wife's death". This mistake was corrected in and by the decree of the Orphans' Court which interpolated the word "wife's" in the proper position in the parenthetical clause, thus carrying out the testator's general and particular intent.

Decree affirmed; all costs, as well as the fees and expenses of the guardian and trustee ad litem, to be paid by the Federation of Jewish Charities.

Mr. Chief Justice HORACE STERN and Mr. Justice ALLEN M. STEARNE took no part in the consideration or decision of this case.