McIntyre Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

BOLGER, J., April 20, 1959.—Decedent died November 25, 1926. This trust arose under his will dated January 12, 1926, a copy of which is annexed.

Decedent gave his residuary estate in trust to pay one-third of the income each to his wife, Clara, his daughter, Nellie, and his daughter, Edith, and upon the death of the wife, to divide the income equally between his two daughters for life. He then directed:

"EIGHTH: All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situate, I give, devise and bequeath to my executors and trustees hereinafter named IN TRUST, to hold and invest the same as hereinafter provided, and the net income arising therefrom to pay as follows:

"One-third (1/3) thereof to my wife, Clara Louise McIntyre, for and during the term of her natural life.

"One-third (1/3) thereof (and after the death of my wife 1/2 thereof) to my daughter, Nellie Iva Alber, wife of Charles Alber, for and during the term of her natural life.

"One-third (1/3) thereof (and after the death of my wife 1/2 thereof) to my daughter Edith Irene McIntyre, for and during the term of her natural life.

"In case either of my said daughters shall die leaving to survive her a minor child or children or issue of deceased children who are minors, I authorize and direct my executors and trustees to apply per stirpes the income payable to my said daughter at the time of her death to and among said minors for their maintenance, education and support.

"As the said minor child or children or said issue of deceased children of my daughters shall successively reach the age of twenty-one years, I direct that the proportion of the principal of said trust fund pre-

viously supporting the share of income payable to them be paid and distributed to such child or children or such issue of deceased children.

"In case either of my daughters shall die without leaving to survive her a child or children or issue of deceased children, I give, devise and bequeath the residue of my estate to such persons and in such proportions as would have taken the same in case I had survived my daughters and died immediately after the death of the survivor of them intestate, unmarried and without issue.

"Provided, however, that I hereby give to either of my said daughters who may leave surviving them children or issue of deceased children the power to appoint in her last Will and Testament that proportion of the principal and interest of this Trust fund to and among such children and such issue of deceased children upon such terms and in such proportions as may to either of them seem fit."

Clara, testator's wife, died in 1952. The two daughters survived her.

The account has been filed because Edith died unmarried and without issue. Nellie is living and has issue. The collateral heirs of testator are two nieces. On behalf of the nieces, it is contended that the death of either daughter without issue results in the termination of one-half of the trust and that distribution must be made to them since they qualify as ". . . such persons and in such proportions as would have taken the same in case I had survived my daughters and died immediately after the death of the survivor of them intestate, unmarried and without issue." On behalf of the surviving daughter, Nellie, it is contended that testator proposed a stirpital distribution of his estate and that the direction to distribute "residue" upon the death of a daughter without issue was intended to become effective upon the extinction of

his lineal descendants. At the time the will was executed, Edith was unmarried. Nellie was married and had two children then living.

The language employed in this will is ambiguous, therefore artificial rules of construction must be invoked in order to ascertain the intent of testator from the words he used, and not to isolate any particular paragraph of item eighth from the entire context in which his distributive intent is spelled out. It is to be noted that testator considered that upon the death of either daughter, she might be survived by minor children. In such an event he directed the continuation of the trust and a stirpital distribution of income among such grandchildren until each should attain age 21 and as each grandchild attains age 21, there is a direction to distribute the share of principal from which each such grandchild had been receiving income. At the death of either daughter, if all of her children had attained their majority and there was no issue of a deceased child who was a minor, distribution of principal supporting her income would be made upon the death of the life-tenant-parent to said adult children.

Testator then goes on to provide for disposition of principal should *either* daughter die without issue. His language is inept and ambiguous because upon the death of either daughter without issue "the *residue* of my estate" is given to his intestate (collateral) heirs who are to be ascertained supposititiously as though testator had survived his daughters, both of whom had died without leaving issue, and he had died immediately thereafter, intestate, unmarried and without issue.

In the concluding paragraph he gives to *either* of his daughters who might leave issue her surviving ". . . the power to appoint in her last will and testament *that proportion of the principal and interest of*

*this trust fund . . ." to her issue.* To which trust fund does this clause refer? It is important to note that he does not identify it as he did in the earlier paragraph directing the gifts of principal in remainder to his children: "I direct that the proportion of the principal of said trust fund previously supporting the share of income payable to them . . . ," as each attained age 21. The clause is subject to two possible interpretations: That such power of appointment shall apply to the share only of such daughter as dies leaving issue; or to the share of a daughter dying without issue. It is evident and it is therefore concluded that testator had in mind the share of principal from which a childless daughter had been receiving income during her life. This is evident when you consider that, as stated, he had already made a direct gift of the share of a daughter who might die leaving issue stirpitally to such issue. To construe the disputed clause otherwise would create a conflict between it and the prior provision, a result certainly not intended by testator. It follows that the disputed clause must relate to another fund than that to which the earlier gift applies, viz., the share of a daughter dying without issue.

This proviso would otherwise be meaningless and would, therefore, be regarded as surplusage. However, in ascertaining the intent and purpose of a testator, as expressed by his will, we should, if possible, harmonize the language so as to give effect to what apparently might be inconsistent and repugnant clauses or provisions. We are not at liberty to disregard plain words and say that they are meaningless, unless after a careful consideration of the entire instrument, it is not possible to give them any meaning: 2 Hunter, Pennsylvania Orphans' Court Commonplace Book, 1422, Wills, §2 (*d*), "Inconsistencies: irreconcilable provisions."

This construction is buttressed by referring to the time and circumstances upon which collaterals are to take the residue, viz., "to such persons and in such proportions as would have taken the same in case I had survived my daughters and died immediately after the death of the survivor of them intestate, unmarried and without issue." Since one of the daughters is still living, the event and the conditions upon which collaterals are to take has not occurred, since daughter Nellie is still living and has children.

Some reference must be made to the position this disputed gift occupies in the overall plan of the will. Although this fact is not controlling, it has some weight in this case. Up to the point where this disputed paragraph appears, we observe a logical and complete plan of distribution, aside from the absence of an express cross remainder, disposition of income to a surviving daughter upon the death of one of them without leaving issue. The only remaining contingency to be provided for is the event of both daughters (not either) dying without issue. It is logical that testator intended this clause to apply upon that event. That conclusion also supplies the answer to what fund would constitute "the residue of my estate", appearing in the contingent gift to collaterals, viz., the whole principal, not the share of "either" dying without issue.

We realize the effect of this is to change the words "either" to "both" in the controversial paragraph. There is ample authority for such action when it is clearly indicated once testator's intent has been ascertained: Sowers Estate, 383 Pa. 566. The court, quoting from Lifter Estate, 377 Pa. 227, 231, held:

"A Court has no power to rewrite a will to supply a testator's unexpressed intent, or to cover circumstances or conditions or contingencies which he apparently did not foresee or provide for.

"Moreover: 'The Court is always reluctant to supply words of material import to a will: Elkins' Estate, 339 Pa. 193, 12 A. 2d 83. ". . . interpretation is never to assume the proportions of reformation . . ."' Berger Estate, 360 Pa. 366, 371, 61 A. 2d 855.

" ' "Words and phrases may be supplied or rejected when warranted by the immediate context or the general scheme of the will, . . .": Bender v. Bender, 226 Pa. 607, 613. See also Jacobs' Estate, 343 Pa. 387, 392': Davis's Estate, 346 Pa. 247, 251, 29 A. 2d 700.

" 'A word or words may be supplied where there is a clear inference from the whole will that the words were omitted [by mistake]: Hellerman's Appeal, 115 Pa. 120, 8 A. 768; Jacobs' Estate, 343 Pa. 387, 22 A. 2d 744; Wittmer's Estate, 151 Pa. Superior Ct. 274, 30 A. 2d 197; 2 Page on Wills (3rd ed.), page 861': Riegel v. Oliver, 352 Pa. 244, 247-248, 42 A. 2d 602."

The above construction utilizes all of the language of the eighth item of the will and favors the blood line of testator: Penrose's Appeal, 102 Pa. 448; Clark Estate, 359 Pa. 411.

It is to be noted that there is no specific disposition of income following the death of either daughter without issue. The auditing judge, however, believes that by implication testator gave income to the surviving life tenant: Irwin v. Hill, 194 Pa. 224, and the cases cited in 2 Hunter, Pennsylvania Orphans' Court Commonplace Book, 1373, Vested and Contingent Interests, §16(b). Since testator specifically provided that the share of principal could be appointed by the daughter who survives and has issue, there can be no distribution of principal until her death.

If it is contended that there is an intestacy with reference to the income from the one-half of the trust in accordance with the line of cases beginning with DeSilver Estate, 142 Pa. 74, it should be noted that by her will the widow bequeathed her entire residuary

estate in equal shares to her two daughters and that Edith, the daughter who is now deceased, by her will gave all of her interest in the present estate to her sister, Nellie, the surviving life tenant. However, for the reasons above stated, the auditing judge finds that there is no intestacy with respect to the income from the one-half share.

And now, April, 20, 1959, the account is confirmed nisi.

*J. Wesley McWilliams* and *J. Harry Wagner, Jr.*, for exceptants.

*Dilworth, Paxson, Kalish, Kohn & Dilks*, contra.

SHOYER, J., June 19, 1959.—The pole star for the guidance of the court in the construction of every will is the intent of testator: Britt Estate, 369 Pa. 450, 454. The will must be examined from its four corners to properly determine this intent: March Estate, 357 Pa. 216, 218. A construction which utilizes every one of testator's words, and discards none as superfluous or without meaning, is desirable and should be adopted if possible: Collins Estate, 393 Pa. 519, 522.

Judge Bolger, in a careful and thorough analysis of the will of this decedent, determined that in setting up his residuary trust testator sought to effect equality between his two daughters, his only children, and their surviving issue. Edith, one of the daughters, having died without issue, the learned auditing judge refused the claim of testator's nieces for immediate distribution of one-half the corpus, and instead, awarded the income to the daughter, Nellie, who survives and has children.

The only uncertainty as to the remainder attends testator's use of the phrase "that proportion of the principal and interest of this Trust fund" in the last subparagraph of eighth. Ambiguity arises from testator's failure to identify "that proportion" with the

same precision previously exercised when he distributed stirpitally to issue surviving a daughter. However, the testamentary power to appoint is expressly given only to a daughter leaving issue, and were this power intended to apply to *her* own proportion rather than to the share of the daughter dying without issue, testator could well have followed *"her* last Will and Testament" with *"her* proportion" to remove all doubt. But then he would at the same time be contradicting his earlier provision for equal stirpital distribution. The construction adopted by the learned auditing judge not only avoids a conflict, but preserves the testamentary scheme of equal distribution and utilizes all the words in paragraph eighth.

Nor do we have the slightest hesitancy over testator's use of "either of my daughters" for "either [or both] of my daughters" in the next to last subparagraph. It is here that testator provides for distribution of the remainder to his collaterals upon the death of one or both daughters without issue. There is no reason to believe that he was restricting this distribution to the situation where only one of his two daughters died without issue. Rather does his language illustrate a careless, but not uncommon, use of the pronoun "either". Reference to Webster's New International Dictionary, 2nd Ed. (1959), shows that when used as an adjective "either" means "each of two; the one *and* the other", also "formerly both" and when used as a pronoun it means "the one *or* the other". Use of the pronoun instead of the adjective to mean "the one *and* the other" or "both" is not uncommon, and it is obvious that testator has made such grammatical error here, as well as in the earlier subparagraph distributing income to the daughters' issue during minority.

The interest of testator's nieces, the exceptants, is merely contingent at the present time, for it is only

after the death of *both* daughters that testator has provided that his surviving collaterals should be ascertained. Apparently there are also present elements of a contingency with a double aspect: Cf. Moss Estate, 80 Pa. Superior Ct. 323. Decision of that question is not now before us.

Having disposed of exceptants' claim to principal, we note our approval of the award of income to Nellie for the reasons so well stated in the adjudication.

All exceptions are dismissed and the adjudication is confirmed absolutely.