# Zolitor v. Election Board of the County of Montgomery

*Joseph M. Hoeffel*, for plaintiffs.

*R. Stephen Barrett*, for Montgomery County.

*Edward T. Bresnan*, for Montgomery County Election Board.

*Paul C. Vangrossi*, for Norristown Borough.

*Alan J. Josel*, for Sally Ransom.

OTT, *J.*, February 23, 1988 —

## FACTS

On December 8, 1987, the mayor of the Borough of Norristown, John Marberger, died. Pursuant to section 507A of the Norristown Home Rule Charter, 346 Pa. Code §41.5-507, the Norristown Council appointed a mayor on December 15, 1987, to fill Marberger's unexpired term which runs until the first Monday of January 1990. Section 507A of the Norristown Charter states that council shall fill any vacancy in the office of mayor within 30 days. The charter further instructs in section 507B that:

"If the unexpired term of a mayor appointed to fill a vacancy is more than 18 months, then at the next regularly scheduled primary, municipal or general election occurring at least 60 days after the vacancy occurs, a qualified person shall be elected to fill the vacancy by special election as provided in the election laws of the Commonwealth of Pennsylvania."

As the unexpired term of the appointed mayor exceeded 18 months, the Norristown Council approved a motion on January 5, 1988, to instruct the borough solicitor to notify the election board of Montgomery County of Norristown's intention to hold an election for mayor on April 26, 1988. April 26, 1988, is the next regularly scheduled primary, municipal, or general election occurring at least sixty days after the death of Mayor Marberger.

The election board held a duly advertised and convened meeting on January 28, 1988, and at that time considered the Norristown Council's request for a special election for mayor. The request was denied.

Plaintiffs, acting in their individual capacities as residents, taxpayers, and registered voters of the Borough of Norristown, brought an action for declaratory relief. They seek an order from this court requiring the election board, the Borough of Norristown, and the County of Montgomery to schedule and conduct a special election for the office of mayor of Norristown during the primary election scheduled for April 26, 1988.

Sally Ransom has filed in her capacity as a registered voter of the Borough of Norristown a petition to intervene as a party defendant in this case. Ms. Ransom avers that an order requiring a special election for mayor would cause the unnecessary expenditure of borough funds and is otherwise improper for a variety of reasons.

This court held a hearing on the above stated matters on February 19, 1988. All factual averments in plaintiffs'. complaint were either stipulated to or admitted by counsel at the hearing. Accordingly,

this matter proceeded in the nature of a case stated.[1]

## PRE-TRIAL MOTIONS

Preliminarily, the court considered the petition of Sally Ransom, seeking right to intervene as a party defendant pursuant to Pennsylvania Rule of Civil Procedure 2327. Although no objection was raised by the other parties, intervention is not automatic upon the agreement of parties or their counsel absent appropriate findings and order of the trial court. *Anstey v. Giantonic,* 14 Chester L. Rep. 166 (1966).

Pa.R.C.P. 2327 provides in pertinent part:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if . . . (4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

A request to intervene is addressed to the sound discretion of the trial court and, absent a manifest abuse of discretion, its exercise will not be interfered with on review. *Wilson v. State Farm Mutual Automobile Insurance Company,* 512 Pa. 486, 517 A.2d 944 (1986); *Darlington v. Reilly,* 363 Pa. 72, 69 A.2d 84 (1949).

---

1. All parties were represented at the hearing by counsel. Montgomery County announced through its counsel that it would file no responsive pleading and would not participate in argument, relying instead and adopting entirely the arguments and positions of the county election board. Counsel for Norristown Borough announced that pursuant to instructions from his client, he would be filing no responsive pleading and would take no position on either the plaintiffs' complaint or the petition to intervene. These developments effectively reduced participation at the hearing to counsel for the plaintiffs, the election board and Sally Ransom.

No one having challenged the facts set forth in Ms. Ransom's petition to intervene, they are accepted as true by the court. The court has no difficulty concluding that as a registered voter from the Borough of Norristown, a determination of the present action may affect Ms. Ransom's legally enforceable interest in voting in a specially scheduled election. Accordingly, Ms. Ransom satisfies the necessary prerequisites to the right to intervene. Nevertheless, a court may still refuse to grant intervention under Pa.R.C.P. 2329 if "the interest of the petitioner is already adequately represented." It could be persuasively argued that the interests of the petitioner were more than adequately represented by able counsel for the county election board who took the same position on the merits of plaintiffs' complaint. Under similar circumstances, however, the Commonwealth Court upheld a lower court's approval of intervention on the basis that to do so, obviated any contention that the petitioner's interests were not adequately represented and because of the possibility of further appeals in the case. *Wilson v. Wallingford Inc., v. Township of Nether Providence,* 85 Pa. Commw. 104, 481 A.2d 692 (1984). Weighing all the considerations, the court determined intervention to be appropriate in these proceedings and permitted Ms. Ransom to intervene as a party defendant.

Pursuant to Pa. R.C.P. 2328, Ms. Ransom had attached to her petition a copy of preliminary objections contesting the capacity of the plaintiffs to bring the within action and demurring to their complaint. Following approval of intervention, the original preliminary objections were filed at the hearing. Simultaneously, Ms. Ransom filed an answer, new matter and counterclaim to be determined along

with the merits of plaintiffs' complaint should the preliminary objections be dismissed.[2]

Defendant Ransom's preliminary objection challenging the plaintiffs' capacity to sue raises three separate issues. The first is that plaintiffs' factual allegations are insufficient to establish their right to relief under Pennsylvania's Declaratory Judgments Act, Act of July 9, 1976, P.L. 586, 42 Pa.C.S. §7531 et. seq. We disagree. 42 Pa.C.S. section 7533 provides in pertinent part:

"Any person . . . whose rights, status or other legal relations are affected by a statute, [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute, [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." By alleging the county election board's denial of a special election has created a controversy and uncertainty in the legal rights and status of the plaintiffs, they are claiming their rights are affected by a question surrounding the validity of Norristown's Home Rule Charter. When a court determines, as it has here, that a complaint alleges antagonistic claims which indicate imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy, a declaratory judgment action is

---

2. Normal and customary practice would have required Ms. Ransom's preliminary objections to be made subject to a rule returnable and argued pursuant to praecipe. Likewise, Ms. Ransom's new matter and counterclaim, if necessary, would afford the plaintiff the benefit of a 20 day response period under Pa.R.C.P 1026(a). Given the urgencies created by the factual chronology and the impending primary election date, the court agreed to rule on all preliminary motions as well as the merits of plaintiffs' complaint pursuant to the single hearing so as to permit a timely emergency appeal should any party so desire.

proper. *Liberty Mutual Insurance Company v. S.G.S. Company,* 456 Pa. 94, 318 A.2d 906 (1974); *In re Lifter's Estate,* 377 Pa. 227, 103 A.2d 670 (1954).

Likewise, plaintiffs' prayer for relief seeks a declaration of the county's duties under the Norristown Home Rule Charter relative to conducting a special election and as such, plaintiffs seek a clarification of their rights as voters under that statute. Plaintiffs have standing to bring this action.

Defendant Ransom next alleges that plaintiffs lack capacity to sue defendant board of elections inasmuch as it is a mere agency of Montgomery County. Since Montgomery County's counsel expressly adopted the answer and arguments of its election board, those two entities are acting jointly in these proceedings and both have agreed to implement the court's order. Moreover, precedent exists for suits of this nature to be brought against the county agency in charge of election. See e.g., *Wright v. Beaver County Board of Elections,* 25 Beaver Leg. J. 7 (1963).

Finally, defendant Ransom challenges plaintiffs' capacity to sue on the basis of their failure to appeal the decision of defendant election board rendered January 28, 1988. This court need not determine whether an appeal was available to plaintiff or, if so, the efficacy of same in light of the imminent primary election. Under Pennsylvania's Declaratory Judgments Act, there is no requirement that a plaintiff exhaust all administrative remedies. *Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission,* 67 Pa. Commw. 400, 447 A.2d 675, (1982), aff'd. 501 Pa. 71, 459 A.2d 1218 (1983).

Defendant Ransom has also raised preliminary objections in the nature of a demurrer. Her objection is well taken as to defendant Borough of Norris-

town as plaintiffs have failed to allege any action whatsoever on the part of the borough which would entitle them to relief. Indeed, the request to defendant election board for the scheduling of a special election was made by the solicitor for defendant borough pursuant to instructions received from borough council. Accordingly, Norristown Borough should be dismissed as a party defendant. The remainder of defendant Ransom's arguments in the nature of a demurrer utilize and invoke the same theories set forth in her arguments addressed to plaintiffs' lack of capacity to sue. These objections were properly dismissed.

## MERITS

Turning to the merits of plaintiffs' claims, section 507B of the Norristown Charter clearly directs that a special election should be held for the office of mayor when the unexpired term of a mayor appointed under section 507A of the charter exceeds eighteen months. This special election is to be held at the next regularly scheduled primary, municipal, or scheduled election which falls more than 60 days after the vacancy occurs. The primary election scheduled for April 26, 1988, would thus under section 507B be the appropriate date for a special election for mayor.

The appropriate course of action, however, is thrown into doubt by the provisions of the Pennsylvania Election Code. Act of June 3, 1937, P.L. 1333, §1 et. seq., 25 P.S. §2600 et. seq. Municipal elections "shall be held biennially on the Tuesday next following the first Monday of November in each odd-numbered year." 25 P.S. §2752. The Election Code further provides for special elections when a vacancy occurs in *certain* offices. 25 P.S. §2778.1

expressly allows, for example, special elections for members of councils or legislative bodies of cities, boroughs, towns, and townships. There is no requirement under section 2778.1 that these special elections be held in an odd-numbered year. The Pennsylvania Election Code does not make any provision for a special election to fill a vacancy in the office of mayor. The question is therefore presented whether the Election Code prohibits Norristown from holding a special election under section 507B of its charter in 1988, an even-numbered year.

A similar situation was considered by the Pennsylvania Supreme Court in *Cali v. Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962). There, the city solicitor of Philadelphia requested that the county board of elections take appropriate steps to fill by election in 1962 the vacancy created by the resignation of Mayor Dilworth. The Philadelphia Home Rule Charter, 351 Pa. Code §1.1-100 et. seq., provided in section 3-500 that "[a]n election to fill a vacancy for an unexpired term in the office of mayor shall be held at the next municipal or general election occurring more than 30 days after the vacancy occurs, unless the vacancy occurs in the last year of the term, . . ."

The Pennsylvania Supreme Court found, however, that the Pennsylvania election code prohibited Philadelphia from holding a special election to fill the vacancy in the office of mayor during an even-numbered year even though the city charter would have permitted such an election in 1962.

The Pennsylvania Supreme Court stated that 25 P.S. §2752 and its provisions for municipal elections in odd-numbered years only, applies to all elections for the office of mayor including those filling vacancies. The legislature, the court noted, was well aware of how to provide exceptions to section 2752.

The election code allows special elections in any year to fill vacancies in several offices. As no exception is provided for the office of mayor, all elections for mayor must be in odd-numbered years. Despite the many amendments in the Pennsylvania Election Code since *Cali,* those provisions applicable in 1962 remain unchanged. The plaintiffs acknowledged this fact at the hearing. The plaintiffs further conceded at the hearing that the election code as applied by Chief Justice Bell in *Cali* would, if applicable to the case at bar, necessitate the denial of their request for declaratory relief.

The *Cali* court found that the provisions of the Philadelphia Home Rule Charter were subordinate to the election code and other acts of the general assembly by virtue of the First Class City Home Rule Act of 1949, Act of April 21, 1949, P.L. 665, §1 et seq., 53 P.S. §13101 et seq. (1949 Enabling Act). Article II, section 17 of the 1949 Enabling Act (53 P.S. Section 13131) stated that the city "shall have complete powers of legislation and administration in relation to its municipal functions, including the power and authority to prescribe the elective city officers, who shall be nominated and elected only in the manner provided by, and in accordance with, the provisions of the Pennsylvania Election Code and its amendments, for the nomination and election of municipal officers."

The court in *Cali* further cited Article II, section 18 of the 1949 Enabling Act (25 P.S. §13133) which provided that "[n]otwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the general assembly which are . . . (b) Applicable in every part of the commonwealth. (c) Applicable to all cities of the commonwealth."

Chief Justice Bell stressed in *Cali* the importance of enabling legislation to the exercise of municipal power by noting "municipalities are not sovereigns; they have no original or fundamental power of legislation; they have the power to enact only those ordinances which are authorized by the constitution or by an enabling act of legislature." *Cali*, 406 Pa. at 295, 177 A.2d. at 827 (quoting *Commonwealth ex. rel. Truscott v. Philadelphia*, 380 Pa. 367, 369, 111 A.2d 136, 1955)."

Plaintiffs argue that *Cali* does not apply to the case at bar because the 1972 Home Rule Charter and Optional Plans Law, Act of April 13, 1972, No. 62, §101 et. seq., 53 P.S. §1-101 et. seq., (1972 Enabling Act) which authorized and limited home rule in Norristown is significantly different from that which established Philadelphia home rule in 1949. However, a careful reading of these two enabling acts reveal that they are, in fact, quite similar.[3]

Section 1-302 of the 1972 Enabling Act states in nearly identical language to the previously quoted section 18 of the 1949 Act that "(b) No municipality shall . . . (ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the general assembly which are applicable in every part of the commonwealth." 53 P.S. §1-302(b)(ii). Plaintiffs attempt to distinguish the two Enabling Acts by claiming the 1949 act contains only general blanket limitations regarding state-wide legislation while the 1972 act contains specific limitations on municipal authority regarding the conduct of elections. As this limitation in the 1972 Enabling Act

---

3. This court examined the available legislative history for the 1972 Enabling Act and its amendments and found nothing enlightening as to legislative intent in regard to its relationship to the 1949 Enabling Act.

does not include the scheduling of elections, plaintiffs reason, Norristown is free to schedule local special elections as it sees fit.[4] The 1949 Act does contain, like its 1972 counterpart, a list of specific limitations which includes a prohibition of city actions which are contrary to acts of the general assembly. One of the specific limitations provides for the personal registration of electors. 53 P.S. §13133(a)(7). Therefore, the Supreme Court in *Cali* also had before it an enabling act which provided in both general and specific terms that which a home rule government may not do. The *Cali* court did not find that the specific limitations on elections contained in the 1949 Enabling Act meant that the city of Philadelphia was free to act as it saw fit, even in contravention of the election code, in all other election matters. This court agrees. Furthermore, the 1972 Enabling Act reinforces the message of the 1949 Act that the laws of the general assembly take precedence over the Home Rule Charter by adding the provision that:

"Acts of the general assembly in effect on the effective date of this act that are uniform and applicable throughout the commonwealth shall remain in effect and shall not be changed or modified by this act. Acts of the general assembly enacted after the

---

4. The 1972 Enabling Act states at 53 P.S. §1-302(a)(5) that a home rule municipality shall not have any power or authority contrary to, or in limitation or enlargement of powers granted by the general assembly in regard to "the registration of electors and the conduct of elections." Plaintiffs argue that the word conduct does not encompass the scheduling of an election. All parties agreed that they could find no cases construing this phrase. This court need make no determination of this issue as the general language of the 1972 Enabling Act sufficiently dictates the subordination of the Norristown Charter provisions to the election code.

effective date of this act that are uniform and applicable, in every part of the commonwealth shall supersede any municipal ordinance or resolution on the same subject." 53 P.S. §1-302(c).

While it is true that the 1972 Enabling Act does not contain any section parallel to the previously quoted 1949 provision that Philadelphia shall have the power to elect officers in accordance with the Pennsylvania Election Code, (53 P.S. §13131), it is clear that Norristown in unable to exercise powers which are contrary to the acts of the general assembly including, of course, the Election Code. The Pennsylvania Supreme Court held in *Cali* that the Election Code does not allow the election of a mayor in an even-numbered year. As a result, this court will not grant the plaintiffs' request for an order directing the Montgomery County Election Board to conduct a special election for the office of Mayor of Norristown during the primary election scheduled for April 26, 1988.

Further, it is worth noting that despite the confusion as to the relationship between, and the proper reading of the Philadelphia Home Rule Charter, the 1949 Enabling Act, and the election code which led to the *Cali* decision in 1962, the legislature has not seen fit in the intervening years to alter the result reached in *Cali*. The legislature implicity affirmed the *Cali* case when it enacted the 1972 Enabling Act which so closely resembles the provisions of the 1949 Enabling Act. The Statutory Construction Act, Act of December 6, 1972, P.L. 1339, §3, et. seq., 1 Pa. C.S. §1501, et. seq., provides that:

"[i]n ascertaining the intention of the general assembly in the enactment of a statute the following presumptions, among others, may be used:

. . .

"(4) That when a court of last resort has construed the language used in a statute, the general

assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa. C.S. §1922.

Finally, defendant Ransom seeks counsel fees and costs by means of counterclaim against the plaintiffs. To accomplish this, she invokes 42 Pa. C.S. §2503 which permits the granting of fees and costs as a sanction for engaging in vexatious or bad faith litigation. All parties to this action were represented by experienced and able counsel held in high regard by this court. Though this court has determined that plaintiffs are not entitled to the relief they seek, it cannot conclude the relief was sought in bad faith. Defendant Ransom's counterclaim is denied and dismissed. Each party must bear its own costs.

## ORDER

And now, February 23, 1988, upon consideration of plaintiff's complaint for declaratory relief, the preliminary objections, answers and counterclaims filed in response thereto and following a hearing on February 19, 1988, it is ordered and decreed as follows:

(1) The petition of defendant/intervenor, Sally Ransom, to intervene as a party defendant is granted;

(2) Defendant Ransom's preliminary objection in the nature of a demurrer as to the inclusion of defendant Norristown Borough is sustained and defendant Norristown Borough is dismissed as a party to this action;

(3) The remaining preliminary objections of defendant/intervenor Sally Ransom are dismissed;

(4) Plaintiffs' complaint for declaratory relief is denied and dismissed;

(5) Defendant/intervenor Sally Ransom's counterclaim for legal fees and costs is denied and dismissed.